UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION
BOARD, as Liquidating Agent of U.S. Central
Federal Credit Union, Western Corporate Federal
Credit Union, Members United Corporate Federal
Credit Union, Southwest Corporate Federal Credit
Union, and Constitution Corporate Federal Credit
Union, in its own right, and on behalf of NCUA
GUARANTEED NOTES TRUST 2010-R1, NCUA
GUARANTEED NOTES TRUST 2010-R2, NCUA
GUARANTEED NOTES TRUST 2010-R3, NCUA
GUARANTEED NOTES TRUST 2011-R1, NCUA
GUARANTEED NOTES TRUST 2011-R2, NCUA
GUARANTEED NOTES TRUST 2011-R3, NCUA
GUARANTEED NOTES TRUST 2011-R4, NCUA
GUARANTEED NOTES TRUST 2011-R5, NCUA
GUARANTEED NOTES TRUST 2011-R6, NCUA
GUARANTEED NOTES TRUST 2011-M1,

                                        Plaintiffs,

                      - against -

HSBC BANK USA, NATIONAL ASSOCIATION,

                                        Defendant.
-----------------------------------------------------------------X

**OPINION AND
ORDER**

**15-cv-2144 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.      INTRODUCTION

Plaintiffs in this case and three related cases allege the failure of

HSBC Bank USA, National Assocation ("HSBC") to discharge its duties as a

trustee for residential mortgage backed securities ("RMBS") trusts.  This Court previously ruled on HSBC's motion to dismiss in the three related cases,[1] and those arguments were incorporated in the motion to dismiss this Complaint.[2]  HSBC also moves to dismiss the Complaint on the grounds that the National Credit Union Administration ("NCUA") Board lacks standing to sue and that NCUA's claims are barred by the applicable statute of limitations.  For the following reasons, HSBC's motion to dismiss is denied.

## II.    BACKGROUND[3]

NCUA is an independent agency of the Executive Branch of the United States Government that, among other things, regulates federal credit unions.[4]  The NCUA Board manages NCUA, and under 12 U.S.C. § 1787 has the authority to close an insured credit union and appoint itself the liquidating agent

---

[1]    *See Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n*, Nos. 14 Civ. 8175, 14 Civ. 9366, 14 Civ. 10101, 2015 WL 3455121 (S.D.N.Y. June 1, 2015).

[2]    *See* 4/27/15 Letter from George A. Borden, Counsel to HSBC, to the Court.

[3]    The facts below are taken from the Complaint ("Compl.").  The background to this litigation and the general structure of the RMBS trusts are summarized in *Royal Park*, 2015 WL 34551221, at *1.

[4]    *See* Compl. ¶ 19.

for the credit union.[5]  As the liquidating agent for a failed credit union, the NCUA

Board succeeds to all rights, titles, powers, and privileges of the credit union.[6]

The five corporate credit unions[7] at issue in this case held mortgage-

backed securities issued by thirty-seven trusts for which HSBC served as Indenture

Trustee.[8]  In 2009 and 2010, after these securities became distressed, the NCUA

Board placed the corporate credit unions into conservatorship and then into

involuntary liquidation and appointed itself liquidating agent.[9]  In 2010, NCUA

created the NCUA Guaranteed Note ("NGN") Program to liquidate the distressed

securities (the "Legacy Assets") from the five failed corporate credit unions.[10]  The

NGN Program created ten new Delaware statutory trusts — the NGN Trusts — and

transferred all but five of the Legacy Assets into these new trusts.[11]  The Bank of

New York Mellon ("BNY Mellon") serves as Indenture Trustee for the NGN

---

[5]     *See id.*

[6]     *See id.*

[7]     A corporate credit union is a credit union that provides investment and financial services to other credit unions.  *See id.* ¶¶ 20–24.

[8]     *See id.* ¶ 3.

[9]     *See id.* ¶¶ 25, 27.

[10]     *See id.* ¶ 27.

[11]     *See id.* ¶ 27–28, 32–41.

Trusts and Wells Fargo Delaware Trust Company, N.A. ("Wells Fargo") serves as Owner Trustee.[12]  The NGN Trusts re-securitized these Legacy Assets by issuing approximately $28.3 billion of NCUA Guaranteed Notes, backed by the cash flows from the Legacy Assets and guaranteed by NCUA in its agency capacity.[13]  The NCUA Board holds certificates that represent a beneficial ownership interest in the NGN Trusts (the "Owner Trust Certificates").[14]  These Certificates entitle the NCUA Board to payments from the NGN Trusts after the principal balance of the senior notes issued by the NGN Trusts has been reduced to zero; all accrued and unpaid interest on the senior notes has been paid; all amounts owed to the Guarantor have been reimbursed; and the Indenture Trustee, the Administrator, and the Owner Trustee have been paid.[15]

NCUA, acting in its capacity as Guarantor, issued a written demand to BNY Mellon, in its capacity as the Indenture Trustee of the NGN Trusts, to take action to assert claims on behalf of the NGN Trusts.[16]  On February 25, 2015, BNY Mellon declined to do so, stating that

---

[12]     *See id.* ¶¶ 32–41.

[13]     *See id.* ¶ 27.

[14]     *See id.* ¶ 29.

[15]     *See id.*

[16]     *See id.* ¶ 48.

> BNY Mellon as Indenture Trustee on the various NCUA re-
> securitization trusts does not intend to pursue the claims outlined
> in the Amended Complaints . . . .   We take no position on the
> merits, but acknowledge and agree that the Guarantor [NCUA]
> has the right to pursue claims based on the re-securitization Trust
> Indentures when the Indenture Trustee fails to do so after
> receiving notice (which we have for the claims in the Amended
> Complaints.[17]

NCUA as Guarantor assigned any right, title, and interest that it possessed with

respect to the NGN Trusts' claims to the NCUA Board.[18]

## III.   APPLICABLE LAW

### A.   Rule 12(b)(1)

Rule 12(b)(1) provides for the dismissal of a claim when the federal

court "lack[s] . . . jurisdiction over the subject matter."  Plaintiff bears the burden

of establishing subject matter jurisdiction by a preponderance of the evidence.[19]

---

[17]     2/25/15 Email from Jonathan Goldblatt, Head of Litigation for BNY
Mellon, to John Libra, Counsel for NCUA ("Goldblatt Email"), Ex. B to
Declaration of John A. Libra in Support of Plaintiffs' Memorandum of Law in
Opposition to HSBC Bank USA, N.A.'s Motion to Dismiss ("Libra Decl.").
*Accord* Compl. ¶ 48.

[18]     *See* Compl. ¶ 31 n.2.  For ease of reference, this Opinion will refer
only to the NCUA, which encompasses both the NCUA Board as well as NCUA in
its capacity as Guarantor.

[19]     *See Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002).  *See also
Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007) ("[T]he
burden of demonstrating that the court has subject matter jurisdiction over the case
falls on the plaintiff as it is the plaintiff who seeks to invoke the court's
jurisdiction.").

In considering a motion to dismiss for lack of subject matter jurisdiction, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[20]  "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[21]

## B.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[22]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the

---

[20]     *Morrison v. National Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted).  *Accord London v. Polishook*, 189 F.3d 196, 199 (2d Cir. 1999) ("[I]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction . . . to proffer the necessary factual predicate — not just an allegation in a complaint — to support jurisdiction.") (citations omitted).

[21]     *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citations omitted).

[22]     *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

Supreme Court in *Ashcroft v. Iqbal*.[23]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[24]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[25]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[26]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]  "The plausibility standard is not akin to a probability requirement" because it requires "more than a sheer possibility that a defendant has acted unlawfully."[28]

### C.    Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave

---

[23]     *See* 556 U.S. 662, 678–79 (2009).

[24]     *Id.* at 679.

[25]     *Id.* at 678.

[26]     *Id.* at 679.

[27]     *Id.* at 678.

[28]     *Id.* (quotation marks omitted).

of court or by written consent of the adverse party."[29]  Although "[t]he Court

should freely give leave when justice so requires,"[30] it is "within the sound

discretion of the district court to grant or deny leave to amend."[31]  When a motion

to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[32]

Where a plaintiff inadequately pleads a claim and cannot offer additional

substantive information to cure the deficient pleading, granting leave to replead is

futile.[33]

## IV.   DISCUSSION

### A.   Standing

HSBC argues that NCUA lacks standing to sue on behalf of the NGN

Trusts — the ten Delaware statutory trusts that are the current owners of the

securities for which HSBC serves as Indenture Trustee.  According to HSBC,

NCUA's three alleged bases for the ability to sue on behalf of the NGN Trusts fail.

---

[29]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir.
2006) (citation and quotation marks omitted).

[30]     Fed. R. Civ. P. 15(a)(2).

[31]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.
2007) (citation omitted).

[32]     *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting
*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[33]     *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

*First*, NCUA has no authority to sue under 12 U.S.C. § 1787 because that statute merely authorizes NCUA to bring any claims that the *credit unions* could have brought, not the NGN Trusts, which are separate entities.  *Second*, NCUA may not establish standing as a third-party beneficiary of the NGN Trust Indentures because NCUA is not suing to enforce any obligations under those Indentures — it is suing to enforce obligations HSBC allegedly owed under separate agreements with different trusts.  *Third*, NCUA does not meet the requirements for a derivative suit.

Though I agree with HSBC's first two arguments, I conclude that NCUA may, with some amendments to its Complaint, assert a derivative claim on behalf of the NGN Trusts.

### 1.   Standing Under Section 1787

NCUA argues that it has "express authority in its capacity as liquidating agent to assert 'all rights, titles, powers, and privileges of the credit union[s].'"[34]  Section 1787(b)(2) grants NCUA the authority to bring any claims that the credit unions would be entitled to bring.  But NCUA erroneously assumes that the credit unions *themselves* would be entitled to sue on behalf of the NGN Trusts.  The now-liquidated credit unions no longer own the securities that are held

---

[34]    Memorandum of Law in Opposition to HSBC Bank USA, N.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Opp. Mem.") at 12 (quoting 12 U.S.C. § 1787(b)(2)).

by the NGN trusts, and have no interest in the NGN Trusts.  As a result, the credit

unions are not entitled to sue on behalf of separate entities in which they have no

interest.  Because the credit unions cannot sue, nothing in section 1787 authorizes

NCUA to bring suit in their stead.

### 2.     Standing as a Third-Party Beneficiary

NCUA next argues that it has third-party beneficiary status under the

Indentures issued by the NGN Trusts, which permits it to sue.  NCUA correctly

notes that recovery from HSBC would benefit NCUA as a holder of NGN Owner

Certificates and as Guarantor.  But NCUA's status as a third-party beneficiary of

the NGN Trust Indentures does not confer third-party beneficiary status for

*completely separate agreements* — the agreements governing the trusts for which

HSBC served as Indenture Trustee.

### 3.     Derivative Standing

NCUA may, however, assert a claim derivatively on behalf of the

NGN Trusts.  HSBC argues that NCUA, after making a demand on BNY Mellon,

fails to plead that BNY Mellon's refusal to take action was wrongful.[35]  HSBC also

---

[35]      HSBC also contends that NCUA should have made a demand on the
Owner Trustee, not the Indenture Trustee.  But the Indentures make clear that only
the Indenture Trustee has the power to appear in or defend any suit and that any
demand is effective upon delivery to the Indenture Trustee.  *See id.* at 15 n.12
(citing Indenture for NCUA Guaranteed Notes Trust 2001-R1, Ex. C to Libra
Decl., at §§ 5.01, 10.04).

contends that to the extent NCUA attempts to plead demand futility, that claim fails because under Delaware law, when a plaintiff makes a demand, it concedes the independence of the decisionmaker.[36]  Neither of these arguments are relevant.

NCUA need not plead that BNY Mellon's refusal to take action was wrongful, because BNY Mellon, while declining to pursue the suit itself, consented to NCUA bringing the action.  BNY Mellon stated that it "d[id] not intend to pursue the claims outlined in the Amended Complaints" but that it took "no position on the merits."[37]  Under Delaware law, "when a corporation chooses to take a position in regards to a derivative action asserted on its behalf, it must affirmatively object to or support the continuation of the litigation."[38]  Thus, a "position of neutrality must be viewed as tacit approval" for the litigation.[39]  BNY Mellon failed to affirmatively object to the litigation, and instead stated that it took "no position on the merits" — a position of neutrality this Court must view as tacit approval under *Kaplan v. Peat, Marwick, Mitchell & Co.*

---

[36]     *See* Memorandum of Law in Support of HSBC Bank USA, N.A.'s Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) at 10 (citing *Spiegel v. Buntrock*, 571 A.2d 767, 774–76 (Del. 1990)).

[37]     Goldblatt Email, Ex. B to Libra Decl.

[38]     *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 (Del. 1988).

[39]     *Id.*

HSBC responds that *Kaplan*'s holding does not apply because BNY Mellon stated that it believed NCUA had "the right to pursue claims based on the [NGN] re-securitization Trust Indentures,"[40] and the claims in the Complaint are not based on these Indentures.  While it is true that the claims here are based on the underlying securities held by the NGN Trusts, and not the NGN Trust Indentures, this is irrelevant to the determination of whether BNY Mellon objected or acquiesced to the litigation.

The purpose of the demand requirement "is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation and to control any litigation which does occur. . . .  [T]he demand requirement recognizes the fundamental precept that directors manage the business and affairs of the corporations."[41]  Further, "before a court can apply the traditional standards for determining when demand is excused it must first examine whether the corporation on whose behalf the action is brought has taken a position concerning the propriety of the derivative litigation."[42]  BNY Mellon stated, when presented with the Complaint in this case, that it took "no position on the merits."

---

[40]     Goldblatt Email, Ex. B to Libra Decl.

[41]     *Kaplan*, 540 A.2d at 730 (internal quotations and citations omitted).

[42]     *Id.* at 731.

The additional statement that NCUA had the right to pursue claims based on the NGN Trust Indentures has no bearing on whether BNY Mellon consented to NCUA bringing this suit.  That BNY Mellon explicitly consented to NCUA's litigating *one* set of claims does not imply that BNY Mellon was withholding such consent as to *another* set of claims.  This reasoning — which forms the implicit premise of HSBC's argument — is directly foreclosed by *Kaplan*.  Having read the Complaint, which is unmistakably based on the agreements governing the trusts that issued the underlying securities held by the NGN Trusts, BNY Mellon took "no position on the merits."  Using its business judgment, it did not oppose the derivative litigation, and therefore, under *Kaplan*, it is deemed to have acquiesced to it.

However, HSBC correctly notes that NCUA has failed to meet some requirements for a derivative suit under Rule 23.1 and Delaware law.  The NGN Trusts are Delaware statutory trusts, which the law treats as "unincorporated association[s]."[43]  Rule 23.1 explicitly applies to unincorporated associations and requires, among other things, that any derivative complaint be verified.  Further, Delaware law requires that the NGN Trusts, as indispensable parties in a derivative suit, be named as nominal defendants so that they can receive the monetary award

---

[43]        12 Del. Code § 3801(g).

in the event of recovery.[44]  Therefore, to maintain the derivative suit, NCUA must

amend its Complaint to conform to these requirements.[45]

## B.   Statute of Limitations

NCUA and HSBC offer competing arguments regarding the

applicable statute of limitations for the various claims in the Complaint, as well as

---

[44]      *See Sternberg v. O'Neil*, 550 A.2d 1105, 1124 (Del. 1988).

[45]      HSBC also notes that in a substantially similar case, Judge Katherine
Forrest concluded that NCUA could not maintain a derivative suit against U.S.
Bank and Bank of America.  *See National Credit Union Admin. Bd. v. U.S. Bank
Nat'l Ass'n*, No. 14 Civ. 9928, 2015 WL 2359295 (S.D.N.Y. May 18, 2015).
There, Judge Forrest stated that NCUA was not a proper derivative plaintiff
because the complaint indicated that recovery would flow directly to NCUA and
not to the NGN Trusts.  Even if this defect were remedied, Judge Forrest held that
NCUA failed to adequately allege demand futility.  *See id.* at * 5–6.  I come to a
different result for two reasons.

*First*, the Complaint makes clear that any recovery will flow to the
NGN Trusts, and only indirectly benefit NCUA as the holder of Owner Trust
Certificates.  *See* Compl. ¶¶ 42–43.  The paragraph referring to direct recovery by
NCUA addresses the potential recovery for claims asserted in other cases, brought
against different defendants.  *See id.* ¶ 30.  I therefore respectfully disagree with
Judge Forrest's interpretation of this paragraph.

*Second*, with regard to demand, the facts are distinguishable between
this case and the case before Judge Forrest.  There, NCUA relied primarily on
demand futility in its argument against the defendants' motion to dismiss, because
the complaint was filed before NCUA received BNY Mellon's position of
neutrality toward the derivative litigation.  Though NCUA referenced BNY
Mellon's position toward the litigation in its opposition brief, NCUA did not argue
that BNY Mellon had consented to the litigation, and did not cite to *Kaplan*.  Thus,
ruling only on the basis of demand futility, Judge Forrest concluded that NCUA
had not met the requirements of Rule 23.1.  *See National Credit Union Admin. Bd.*,
2015 WL 2359295, at *6.  Because the Complaint here includes BNY Mellon's
acquiescence to the litigation, my conclusion differs.

arguments about when the claims accrued.  While this Opinion determines some of

these issues, many of these arguments turn on questions of fact that cannot be

resolved on a motion to dismiss.

NCUA argues that the Extender provision of 12 U.S.C. § 1787 applies

to all claims in the Complaint.  The Extender provision states:

> Notwithstanding any provision of any contract, the applicable
> statute of limitations with regard to any action brought by the
> [NCUA] Board as conservator or liquidating agent shall be—
>    (i) in the case of any contract claim, the longer of—
>        (I) the 6-year period beginning on the date the
>        claim accrues; or
>        (II) the period applicable under State law; and
>    (ii) in the case of any tort claim, the longer of—
>        (I) the 3-year period beginning on the date the
>        claim accrues; or
>        (II) the period applicable under State law.[46]

HSBC argues that, with the exception of claims brought on behalf of the five

securities still held, NCUA is bringing claims on behalf of the NGN Trusts, and not

"as conservator or liquidating agent."  Therefore, HSBC contends that the Extender

provision does not apply.

This appears to be an issue of first impression — HSBC cites no cases

to support its proposition that the Extender provision does not apply when the

NCUA brings a suit derivatively, and I have found none.  NCUA, on the other

---

[46]     12 U.S.C. § 1787(b)(14)(A).

hand, cites only cases where it brought claims directly as a conservator or liquidating agent of credit unions.  In those cases, courts have construed the provision broadly.[47]

  "If the statutory language is plain, [the court] must enforce it according to its terms."[48]  "When deciding whether the language is plain, [the court] must read the words 'in their context and with a view to their place in the overall statutory scheme.'"[49]  If the text is ambiguous, a court may consult the legislative history "to discern the legislative purpose as revealed by the history of the statute."[50]  "'[The court's] obligation is to give effect to congressional purpose so long as the congressional language does not itself bar that result.'"[51]

  The language of the Extender provision appears clear: it applies when

---

[47] *See, e.g.*, *National Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1214–18 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 949 (2015) (examining legislative history to conclude that the provision applies to statutes of repose).

[48] *King v. Burwell*, No. 14-114, 2015 WL 2473448, at *8 (U.S. June 25, 2015).

[49] *Id.* (quoting *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

[50] *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008). *Accord King*, 2015 WL 2473448, at *12 (examining Congress's purpose in drafting the Affordable Care Act to interpret ambiguous statutory text).

[51] *Kozeny*, 541 F.3d at 171 (quoting *Johnson v. United States*, 529 U.S. 694, 710 n.10 (2000)).

the NCUA brings a suit as conservator or liquidating agent.  However, considered in the context of this case, the provision becomes ambiguous.  NCUA originally acted as a liquidating agent of the failed credit unions when it transferred the Legacy Assets to the newly created NGN Trusts, guaranteed repayment of principal and interest for the newly issued securities, and took Owner Trust Certificates representing a beneficial ownership interest in the NGN Trusts. NCUA took these actions "as a means of liquidating the distressed investment securities" to "stabiliz[e] funding for the credit union system."[52]  Now, however, it brings claims against HSBC derivatively, on behalf of the *NGN Trusts*, and not directly on behalf of the credit unions.  The question is thus whether bringing this derivative claim on behalf of separate entities — that is, one step removed from its position as liquidating agent for the credit unions — qualifies as bringing the action *as* a liquidating agent.

The legislative history cited by several other courts explains the broad purpose of the Extender provision:

> Congress enacted [Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")] in the wake of the widespread financial crisis caused by failures of savings and loan associations in the late 1980s.  It did so to prevent the collapse of the industry, attack the root causes of the crisis, and restore public confidence. The preamble to the bill described FIRREA as "An Act . . . to

---

[52]    Compl. ¶ 27.

> enhance the regulatory and enforcement powers of Federal
> financial institutions [and] regulatory agencies."[53]

Moreover, the bill's sponsor stated that the Extender provision should "be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods."[54]

Thus it appears that the Extender provision should be applied whenever NCUA is acting within its "regulatory and enforcement" capacity.  Here, although NCUA is not bringing its claims *directly* as a conservator or liquidating agent of the failed credit unions, NCUA brings these claims derivatively *because of* its status as the liquidating agent of the credit unions.  This is not a case in which the NCUA is bringing a claim removed from its capacity as conservator or liquidating agent.  With respect to all securities at issue in this case, NCUA initially took actions within that role — and continues to do so for the five securities that it chose not to re-securitize.  For the remainder, NCUA made the decision to create the NGN program and re-securitize the distressed securities to

---

[53]     *NCUA*, 764 F.3d at 1232 (internal citations omitted) (quoting FIRREA, Pub. L. No. 101-73, 103 Stat. 183) (emphasis added).

[54]     135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Senator Donald W. Riegle, Jr., then-Chairman of the Committee on Banking, Housing, and Urban Affairs, regarding an identical extender statute that applied to the FDIC).

fulfill its governmental purpose of stabilizing the credit union system.  It seems perverse to conclude, based on these actions, that NCUA is *not* bringing suit as a conservator or liquidating agent, simply because it took this extra step.

Moreover, there can be no doubt that the Federal Government will benefit from any potential recovery, fulfilling the Extender provision's purpose of "maximiz[ing] potential recoveries by the Federal Government."[55]  The recovery will directly benefit the NGN Trusts.  But as holder of Owner Trust Certificates and Guarantor of the notes issued by the NGN Trusts, the Federal Government stands to receive a sizeable derivative benefit.  A potential recovery means that the NGN Trusts will have funds available to pay investors in the NGN Trusts, which lessens the exposure of the Federal Government as Guarantor should the Legacy Assets fail to generate enough income to pay noteholders.[56]  It also increases the amount that the NCUA stands to receive from payment on the Owner Trust Certificates.[57]  Therefore, considering the statutory language and the purpose of the statute, I conclude that it applies to all claims in the Complaint.

The remaining question is when the statute of limitations began to run.

---

[55]     *Id.*

[56]     *See* Compl. ¶ 27.

[57]     *See id.* ¶ 29.

19

The Extender provision states that the date on which the statute of limitations begins to run "shall be the later of— (i) the date of the appointment of the Board as conservator or liquidating agent; or (ii) the date on which the cause of action accrues."[58]  NCUA suggests that the statute of limitations began to run on October 1, 2010, the date of liquidation of the five credit unions.[59]  However, the statute offers only two possible dates: the date of appointment either as conservator or liquidating agent, or the date of accrual.  The choice is therefore between the date of NCUA's appointment as conservator — which predated its appointment as liquidating agent — or the date the various claims accrued, whichever is later.  For those claims in which the date of NCUA's appointment as conservator is later than the date on which the claims accrued, the statute of limitations began to run when NCUA was appointed as conservator and did not reset when the credit unions were placed into liquidation.[60]

As a result, for contract claims, the statute of limitations began to run on March 20, 2009, for claims related to U.S. Central and WesCorp credit unions,

---

[58]     12 U.S.C. § 1787(b)(14)(B).

[59]     *See* Compl. ¶ 25.

[60]     *See National Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, 939 F. Supp. 2d 1113, 1124–25 (D. Kan. 2013).  *See also National Credit Union Admin. Bd. v. Jurcevic*, No. 14 Civ. 926, 2014 WL 5302976, at *4 (N.D. Ohio Oct. 15, 2014).

and September 24, 2010, for Members United, Southwest, and Constitution credit unions.  The Extender provision states that contract claims are timely if they are brought within six years.[61]  NCUA filed the Complaint on March 20, 2015 — exactly six years after the first two credit unions were placed into conservatorship.[62]  Therefore the contract claims are timely.

For NCUA's tort claims, NCUA argues that its claims were filed within three years of the date the claims accrued, and are therefore timely.  The Extender provision states that the applicable statute of limitations is *the later of* the date NCUA was appointed conservator or the date on which the cause of action accrues.  NCUA contends that "many of the claims . . . did not accrue until the claims HSBC should have pursued on the underlying RMBS trusts" expired.[63]  The date on which HSBC's right to sue or make a repurchase demand expired six years after the date the securitizations closed.[64]  NCUA then had three years in which to bring a suit.  Therefore, NCUA's claims are timely for any securitizations that

---

[61]     *See* 12 U.S.C. § 1787(b)(14)(A)(i).

[62]     *See* Compl. ¶ 25.

[63]     *See* Opp. Mem. at 20.

[64]     *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229, 231 (1st Dep't 2013) (stating that claims relating to breaches of representations and warranties accrue on the closing date of the trust).

closed on or after March 20, 2006.[65]

The remainder of the claims are not amenable to resolution on a motion to dismiss because they involve questions of fact as to when the claims accrued, whether the violations were continuing, and whether the statute of limitations should be tolled.[66]  HSBC may assert a statute of limitations defense and move for summary judgment on these claims at a later date.

## V.   CONCLUSION

For the reasons set forth above, HSBC's motion to dismiss is DENIED.  Plaintiffs must amend their Complaint to conform to Rule 23.1 and Delaware law within thirty days of the date of this Order.  The Clerk of the Court is directed to close this motion (Dkt. No. 35).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      July 20, 2015
            New York, New York

---

[65]      HSBC recognizes that if the Extender provision applies, claims arising from trusts that closed on or after this date are timely. *See* Reply Memorandum in Support of HSBC Bank USA, N.A.'s Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) at 8.

[66]      *See* Opp. Mem. at 20–21.

## - Appearances -

**For Plaintiffs:**

David C. Frederick, Esq.
Gregory G. Rapawy, Esq.
Wan Joo Kim, Esq.
Scott K. Attaway, Esq.
Kellogg, Huber, Hansen, Todd, Evans &
Figel, PLLC
1615 M Street, N.W., Suite 400
Washington, DC 20036

David H. Wollmuth, Esq.
Ryan A. Kane, Esq.
Steven S. Fitzgerald, Esq.
Danielle A. D'Aquila, Esq.
William A. Maher, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Ave., Suite 1200
New York, NY 10110
(212) 382-3300

George A. Zelcs, Esq.
Matthew Davies, Esq.
Maximilian C. Gibbons, Esq.
Korein Tillery, LLC
205 North Michigan Ave., Suite 1950
Chicago, IL 60601
(312) 641-9750

John A. Libra, Esq.
Stephen M. Tillery, Esq.
Korein Tillery, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844

**For Defendant:**

Andrew W. Rudge, Esq.
Edward C. Reddington, Esq.
George A. Borden, Esq.
Kevin M. Hodges, Esq.
Vidya Atre Mirmira, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Michael Orth Ware, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

Jennifer M. Rosa, Esq.
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 506-2500