```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/22/2019
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**NATIONAL CREDIT UNION**
**ADMINISTRATION BOARD, et al.,**

                               **Plaintiffs,**            15-CV-02144 (LGS)(SN)

                 -against-                        **OPINION & ORDER**

**HSBC BANK US, NATIONAL ASSOCIATION,**

                               **Defendant.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

       Plaintiffs—the National Credit Union Administration Board ("NCUAB") as liquidating agent for five corporate credit unions—move to supplement the First Amended Complaint (the "FAC") and to substitute Graeme W. Bush as the Plaintiff under Rules 15 and 17 of the Federal Rules of Civil Procedure. Defendant HSBC Bank US, National Association opposes.

       The motion is granted. Plaintiffs have not engaged in undue delay, bad faith, or dilatory tactics. The requested relief would not be futile and would not cause Defendant any undue prejudice. Plaintiffs will, therefore, be allowed to supplement and substitute so that they may proceed with their claims on the merits.

**BACKGROUND**

**I.**      **The Re-Securitization Trusts**

       NCUA is an independent federal agency tasked with regulating federal credit unions. To accomplish this task, the Federal Credit Union Act, 12 U.S.C. §§ 1751 *et seq.*, empowers the agency to place failed credit unions into liquidation, id. § 1787. Upon liquidation, NCUA succeeds to "all rights, titles, powers, and privileges of the credit union, and of any member,

accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union." Id. § 1751(b)(2)(A)(i). In the aftermath of the Great Recession, NCUA placed a number of credit unions into liquidation and assumed their assets, which included investment certificates in residential mortgage-backed securities ("RMBS") trusts for which Defendant serves as trustee. See FAC ¶ 24 (ECF No. 65).

In order to preserve the federal credit union system's solvency during a time of acute stress, NCUA re-securitized some of the liquidated credit unions' toxic assets—including many of the RMBS certificates—into notes guaranteed with the full faith and credit of the United States. See FAC ¶ 27. NCUA did so through a set of three agreements. Id. ¶¶ 27-29. First, NCUA created the NCUA Guaranteed Notes Trusts ("NGN Trusts") by executing trust agreements under the Delaware Statutory Trust Act that conveyed the relevant assets to the NGN Trusts. Id. ¶¶ 28, 45; see also Trust Agreement §§ 2.04, 2.06 (ECF No. 65-3). In exchange, NCUA received the NCUA Guaranteed Notes ("NGNs"), which NCUA sold to investors, as well as Owner Trust Certificates, which entitle NCUA to a final distribution of the NGN Trusts' assets after the NGN Trusts have satisfied all outstanding obligations.[1] Second, the NGN Trusts entered into Indenture Agreements, governed by New York law, with the Bank of New York Mellon ("BNYM") that appointed BNYM as the Indenture Trustee responsible for holding the NGN Trusts' assets as collateral for the NGN Notes. Third, NCUA, the NGN Trusts, and BNYM entered into guaranty agreements. See Guaranty Agreement (ECF No. 65-4).

---

[1] During the pendency of this litigation, four NGN Trusts satisfied all outstanding obligations, were unwound, and re-conveyed their assets to NCUA. Earlier this year, the Court approved amendments by interlineation that substituted NCUA as the direct plaintiff for the certificates that were re-conveyed. See ECF Nos. 305, 308.

## II. The Split Over Derivative Standing

NCUA eventually initiated cases against HSBC, U.S. Bank, Wells Fargo, and Deutsche Bank. Ultimately, NCUA sought to proceed as the direct plaintiff for claims based on RMBS certificates that NCUA held directly (the "direct claims"), and as the derivative plaintiff for claims based on RMBS certificates that NCUA had sold to the NGN Trusts ("NGN claims"). As these actions have proceeded, courts have reached conflicting decisions over whether NCUA has derivative standing to bring the NGN claims.

The first decision came in 2015 in this case. Judge Scheindlin, to whom this case was originally assigned, found that NCUA had derivative standing and denied Defendant's motion to dismiss the NGN claims. See NCUA v. HSBC Bank USA, N.A., 117 F. Supp. 3d 392, 399-400 (S.D.N.Y. 2015) ("HSBC I"). But courts reached the opposite conclusion in the U.S. Bank and Wells Fargo actions. See NCUA v. U.S. Bank N.A., No. 14-CV-9928 (KBF), 2016 WL 796850, at *8-10 (S.D.N.Y. Feb. 25, 2016) (Forrest, J.) ("U.S. Bank I"); BlackRock, NCUA et al. v. Wells Fargo, 247 F. Supp. 3d 377, 407-415 (S.D.N.Y. Mar. 30, 2017) (Failla, J.) ("Wells Fargo I"). In those decisions, the courts found that BNYM was the real party in interest who held the claims.

In response to U.S. Bank I, NCUA requested in that case that BNYM appoint a separate trustee to pursue the NGN claims. BNYM complied and appointed Graeme W. Bush as the Separate Trustee. NCUA then made a motion to supplement its complaint under Fed. R. Civ. P. 15(d) to reflect the appointment of the Separate Trustee and to substitute the Separate Trustee as the real party in interest under Fed. R. Civ. P. 17(a)(3). The court denied this motion. See Order, NCUA v. U.S. Bank N.A., No. 14-CV-9928 (KBF) (S.D.N.Y. May 11, 2016) (ECF No. 141).

While an appeal of that decision was pending, NCUA filed the same motion in response to Wells Fargo I. In that case, the Court granted NCUA's request to supplement and substitute. See NCUA v. Wells Fargo, No. 14-CV-10067 (KPF), 2017 WL 3610511, at *13-21 (S.D.N.Y. 2017) ("Wells Fargo II") (Failla, J.). The court found that the Separate Trustee was a real party in interest, that supplementation would not be futile, that there had been no bad faith or delay, and that supplementation would not cause undue prejudice. Id.

### III. The Court of Appeals' Resolution of the Split

On August 2, 2018, the Court of Appeals decided NCUA's appeal of U.S. Bank I. The Court agreed that NCUA lacked derivative standing to bring the NGN claims and affirmed the decision below. See NCUA v. U.S. Bank, 898 F.3d 243 (2d Cir. 2018) ("U.S. Bank II"). The Court also found that the district court did not abuse its discretion by denying NCUA's motion to supplement and substitute because NCUA had been given an earlier opportunity to replead and cure the defects in its derivative standing. Id. The court also noted, however, that this conclusion "does not mean that a district court's *grant* of leave to supplement in a similar situation would be an abuse of discretion." Id. at 256 n.86 (citing Wells Fargo II).

The day after that decision was issued, Defendant here asked this Court for a pre-motion conference to discuss a motion for judgment on the pleadings. See ECF No. 341. Following the pre-motion conference, the Court issued an order on August 16, 2018, allowing NCUA to move to substitute the appropriate party in interest. See ECF No. 348. On August 29, 2018, BNYM appointed Graeme W. Bush as the separate Trustee to bring claims held by BNYM against Defendant. See Separate Trustee Agreement (ECF No. 353-1). NCUA then filed its motion to supplement. See Pls.' Mot. (ECF No. 351); see also Proposed Supplemental First Amended Complaint (ECF No. 353-3) (the "SFAC").

4

## LEGAL STANDARD

I.      **Federal Rule of Civil Procedure 15**

Federal Rule of Civil Procedure 15 allows a court, on "motion and reasonable notice," and "on just terms," to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). As "a general matter, Rule 15(d) 'reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties.'" Beckett v. Inc. Vill. of Freeport, No. 11-CV-2163 (LDW) (AKT), 2014 WL 1330557, at *9 (E.D.N.Y. Mar. 31, 2014) (quoting Witkowich v. Gonzales, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008)).

A district court may grant a motion to file a supplemental pleading "in the exercise of its discretion, upon reasonable notice and upon such terms as may be just." Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995). Absent "undue delay, bad faith, dilatory tactics, and undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." Id. (internal quotation marks omitted) (quoting Quaratino, 71 F.3d at 66); see also Bornholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989) ("An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party."). The "burden is on the non-moving party to demonstrate the existence of such grounds." Growblox Scis., Inc. v. GCM Admin. Servs., LLC, No. 14-CV-2280 (ER), 2016 WL 1718388, at *4 (S.D.N.Y. Apr. 29, 2016).

To analyze whether a party has carried this burden, a court utilizes the same standard as that applied to a motion to amend brought under Rule 15(a). See, e.g., Klein v. PetroChina Co., 644 F. App'x. 13, 15 (2d Cir. 2016) (summary order); Escoffier v. City of N.Y., No. 13-CV-3918 (JPO) (DF), 2017 WL 65322, at *2 (S.D.N.Y. Jan. 4, 2017) ("[C]ourts adhere to the same liberal standards in determining motions brought under any of these provisions."), adopted by, 2017 WL 3206337 (July 27, 2017); Lin v. Toyo Food, Inc., No. 12-CV-7392 (KMK), 2016 WL 4502040, at *1 (S.D.N.Y. Aug. 26, 2016). Leave to amend may be denied if the amendment would be futile, see, e.g., Knife Rights, Inc. v. Vance, 802 F.3d 377, 389 (2d Cir. 2015), as where the "amended portion of the complaint would fail to state a cause of action," Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000); see also Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007) (holding that an amended complaint must be "sufficient to withstand a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)"). Leave to amend may also be denied "when a party has been given ample prior opportunity to allege a claim," De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 72 (2d Cir. 1996), or "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant," Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016) (internal quotation mark omitted) (quoting Kenney v. Clay, 172 F. Supp. 3d 628, 643 (N.D.N.Y. 2016)).

The "concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." Davidowitz v. Patridge, No. 08-CV- 6962 (NRB), 2010 WL 1779279, at *2 (S.D.N.Y. Apr. 23, 2010) (citing Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 46-47 (2d Cir. 1983)). In "determining what constitutes 'prejudice,' [courts] generally consider whether the

assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000); accord Lin, 2016 WL 4502040, at *1.

## II. Federal Rule of Civil Procedure 17

Rule 17 dictates that every civil action must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a). If a court finds that an action has been brought improperly by a party other than the real party in interest, Rule 17 further instructs that the "court may not dismiss an action for failure to prosecute . . . until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); accord In re SLM Corp. Sec. Litig., 258 F.R.D. 112, 115 (S.D.N.Y. 2009). The Court of Appeals has admonished that a "Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997); accord House of Europe Funding I Ltd. v. Wells Fargo Bank, N.A., No. 13 Civ. 519 (RJS), 2015 WL 5190432, at *2 (S.D.N.Y. Sept. 4, 2015).

## DISCUSSION

Defendant raises four arguments in opposition to Plaintiffs' motion to supplement and substitute: (1) Plaintiffs' motion to supplement and substitute would be futile because the Separate Trustee is not a real party in interest; (2) Plaintiffs failed to identify the proper party in interest out of bad faith, not an honest mistake; (3) Plaintiffs unduly delayed their motion; and (4) the scope of the substitution exceed what is allowed under Rule 17, as interpreted in

Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 418 (2d Cir. 2015). None of these arguments is convincing.

**I.       Futility**

Leave to supplement a complaint may be denied as futile when the new complaint "would fail to state a cause of action." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000). Defendants believe that Plaintiffs' SFAC would be futile for two reasons: (1) the assignment of the claims to the Separate Trustee was incomplete; and (2) BNYM lacks the authority to appoint the Separate Trustee. Neither argument is persuasive.

### A. Effectiveness of the Assignment

To be a real party in interest under Federal Rule 17(a), the "action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003) (citation omitted).[2] A trustee qualifies as the real party in interest when the trust document grants the trustee with "certain customary powers to hold, manage, and dispose of assets for the benefit of others." Wells Fargo Bank Nw., N.A. v. Synergy Aerospace Corp., No. 16-CV-8065 (JPO), 2017 WL 3393945, at *4 (S.D.N.Y. Aug. 7, 2017) (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464 (1980)); see also U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC, 859 F. Supp. 2d 602, 606 (S.D.N.Y. 2012).

Here, the underlying documents grant the Separate Trustee those powers. Before the execution of the Separate Trustee Agreement, BNYM, as the indenture trustee, was the real party

---

[2] Rule 17's real party in interest requirement is related to, but distinct from, Article III standing. The purpose of the "real party in interest" rule is to protect defendants from a subsequent suit by a party that actually possesses the substantive right to recover. See 4-17 Moore's Federal Practice § 17.10 & n.16 (2014) (collecting cases). Thus, a party may have Article III standing but nevertheless not be the real party in interest when the party has completely assigned the claim to another. See Pay Tel Sys. v. Seiscor Techs., Inc., 850 F. Supp. 276, 278 (S.D.N.Y. 1994).

8

in interest. See NCUA Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 252-55 (2d Cir. 2018). BNYM assigned that status to the Separate Trustee when it executed the Separate Trustee Agreement that conveyed "all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee, including pursuit of the Separate Trustee Claims . . . in connection with the Separate Trustee Claims." Separate Trustee Agreement § 1.1 (ECF No. 353-1). That conveyance gave the Separate Trustee all of the powers necessary to be the real party in interest to the claims here. Accord Wells Fargo II, 2017 WL 3610511, at *15 ("Plainly, the Separate Trustee now possesses powers to hold, manage, and dispose of the assets implicated by the Separate Trustee Claims.").

Nevertheless, Defendant argues that the Separate Trustee is not the real party in interest because the Separate Trustee Agreement was not an effective assignment of the NGN Claims. To "be effective, an assignment to transfer a . . . [claim] must manifest an intent to divest the assignor of all control and right to his claim, thereby empowering the assignee to control the cause of action and to receive its fruits." Advanced Magnetics, 106 F.3d at 15 (quotations and citations omitted). Defendant argues that the assignment was incomplete in two respects: despite the agreement, BNYM retains the right to any recoveries from the NGN Claims as well as the right to terminate the Separate Trustee. See Def.'s Opp. at 21. Neither of these points is persuasive.

First, accepting Defendant's characterization that BNYM retains the right to recovery for the sake of argument,[3] that right to recovery does not make the assignment incomplete. A person

---

[3] This characterization of BNYM's "rights" under the agreement is somewhat misleading. Before the Agreement's execution, BNYM may have had all title, claims, powers, rights, and authorities over the NGN Trusts' legal claims. But BNYM itself had no right to recoveries from those claims; the NGN Trusts' beneficiaries had that right. See Defs.' Opp. at 21 ("The [Agreement] provides that any recoveries obtained 'will be remitted to [BYNM] for deposit in the Note Accounts . . . [which are defined as]

9

may be an assignee of a legal claim and a "real party in interest, even though the assignee must account to the assignor for whatever is recovered in the action." Airlines Reporting Corp. v. S & N Travel, Inc., 857 F. Supp. 1043, 1047 (E.D.N.Y. 1994), aff'd, 58 F.3d 857 (2d Cir. 1995); see also Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 284-85 (2008) ("Finally, we note that there is also considerable, more recent authority showing that an assignee for collection may properly sue on the assigned claim in federal court.") (collecting authorities). Defendant's authorities do not hold otherwise. Instead, Defendant's authorities stand for the rather straightforward idea that the power of attorney is not a complete assignment of a legal claim. See Cortlandt St. Recovery Corp., 790 F.3d at 418 ("The grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name.") (quoting Advanced Magnetics, 106 F.3d at 17-18). That proposition is not relevant here; the Agreement unquestionably assigns the Separate Trustee full ownership over the claims. Compare Cortlandt St. Recovery Corp., 790 F.3d at 420 ("The assignment here . . . confers only 'full rights to collect amounts of principal and interest due on the Notes, and to pursue all remedies with respect to the Notes,' making no mention of title to, or ownership of, the claims.") (citation omitted), and Advanced Magnetics, 106 F.3d at 18 ("These writings thereby arguably gave AMI power of attorney to bring suit in the names of the individual selling shareholders, but they did not purport to transfer title or ownership to AMI."), with Separate Trustee Agreement § 1.1 (conveying "all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee, including pursuit of the Separate Trustee Claims . . . in connection with the Separate Trustee Claims").

---

segregated trusts accounts established in the name of BNYM for the benefit of the Noteholders and Guarantor.") (citing Separate Trust Agreement Sch. II).

Second, BNYM's authority to terminate the Separate Trustee is not so broad that it renders the assignment incomplete. The mere fact that BNYM may terminate the Separate Trustee in some circumstances does not defeat the assignment. See Navarro Sav. Ass'n, 446 U.S. at 465 n.14 (finding that assignment to trustees was complete despite ability of beneficiaries to "elect and remove trustees" because that "form of 'control' does not strip the trustees of the powers that make them real parties to the controversy"). Rather, the question is whether the Separate Trustee "is more than just a 'sham' who has no real power to control the litigation . . . at issue." Synergy Aerospace Corp., 2017 WL 3393945, at *4 (quoting Nomura Asset Acceptance Corp. Alternative Loan Tr., Series 2007-1 ex rel. HSBC Bank USA v. Nomura Credit & Capital, Inc., 27 F. Supp. 3d 487, 492 (S.D.N.Y. 2014)). The Separate Trustee passes that test. Under the Agreement, BNYM may terminate the Separate Trustee only for cause or with the Separate Trustee's consent. See Separate Trustee Agreement § 5.13(f). That limited power to terminate for cause does not give BNYM continued control over the claims sufficient to defeat the assignment. Compare Advanced Magnetics, 106 F.3d at 14 (finding that agreement was not an effective assignment because "AMI's agreement . . . was made subject to MLTV's right to terminate the arrangement *at any time*") (emphasis added) with Navarro Sav. Ass'n, 446 U.S. at 465 (finding that trustee had been assigned claims because the beneficiaries could not "control the disposition of this action . . . except in the most extraordinary situations").

Thus, the Separate Trustee Agreement unquestionably gives Mr. Bush control over the claims necessary to qualify as a real party in interest. See Separate Trustee Agreement § 1.1; see also Wells Fargo II, 2017 WL 3610511, at *15. The fact that he must remit recoveries and may be terminated for cause does not defeat that assignment. See Sprint Communs., 554 U.S. at 284-

85; Navarro Sav. Ass'n, 446 U.S. at 465. The proposed supplement to the Complaint would not, therefore, be futile.

### B. Validity of the Separate Trustee Agreement

In the alternative, Defendant argues that the Separate Trustee is not a real party in interest because the Separate Trustee's appointment violates the Indenture Agreement in two respects. See Def.'s Mem. at 21. Neither of the provisions that Defendant points to, however, prevents BNYM from appointing the Separate Trustee.

First, Defendant cites § 5.13(a) of the agreement, which allows BNYM to appoint a Separate Trustee "for the purpose of meeting legal requirements applicable to it in the performance of its duties." Indenture Agreement § 5.13(a) (ECF No. 65-2). Defendant believes that this clause limits BNYM to appointing a separate trustee only for that purpose, and that this purpose has not been met here. But this interpretation is unconvincing. That clause is permissive, not prohibitive; nothing in § 5.13(a) states that BNYM may only appoint a separate trustee in that one circumstance. See id. Thus, when read in context, that clause cannot be interpreted as a prohibition limiting BNYM's authority. Accord Wells Fargo II, 2017 WL 3610511, at *16 ("While the language of § 5.13 empowers BNYM to appoint a separate trustee to meet legal requirements applicable to it in the performance of its duties, that language does not limit BNYM to appointing a separate trustee only for that purpose."). Furthermore, even if the power to appoint the Separate Trustee were limited to BNYM's legal obligations, the appointment would arguably still be a valid and necessary step in pursuit of legal claims. See Indenture Agreement § 5.01(a)(i) (granting the Indenture Trustee "the full power and authority to do all things not inconsistent with the provisions of this Indenture . . . in order to . . . appear in or defend any suit or other proceeding . . . to protect the interests of the Noteholders and the Guarantor.").

Second, Defendant points to a section providing that powers conferred upon a separate trustee "shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate or co-trustee jointly . . . ." Id. § 5.13(b)(i). This provision, when read in context, is not a literal requirement that the Separate Trustee and BNYM do all things jointly. Indeed, if BNYM and the Separate Trustee had to do all things jointly, the appointment of a Separate Trustee would be pointless. Instead, the more natural reading is that BNYM's consent to the Separate Trustee's pursuit of this litigation satisfies the joint act requirement. Accord Wells Fargo II, 2017 WL 3610511, at *16 ("BNYM's consent to the terms of the Separate Trustee Agreement evidences to the Court BNYM's belief that the terms outlined therein are 'not inconsistent' with the Indenture Agreement's provisions.").

Thus, the terms of the Indenture Agreement do not prohibit the Separate Trustee's appointment. They do not, therefore, prevent the Separate Trustee from assuming the role of real party in interest, and Plaintiffs' proposed supplement would not be futile.

## II. Absence of Mistake and Bad Faith

Defendant argues that Plaintiffs were never mistaken about the identity of the real party in interest. Def.'s Opp. at 17-19. Instead, Defendant believes that Plaintiffs deliberately pursued a tenuous legal strategy in order to maximize the reach of the limitations period. Id. Defendant heavily implies that this was done in bad faith, which would be a bar to supplementation and amendment under Rules 15 and 17. See Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc., 906 F.3d 215, 218 (2d Cir. 2018), cert. dismissed sub nom. Cadian Capital Mgmt., LP v. Klein, 139 S. Ct. 1406 (2019); Quaratino, 71 F.3d at 66 (2d Cir. 1995). But none of the evidence offered by Defendant suggests that Plaintiffs have filed their motion in bad faith.

13

Defendant's theory is that Plaintiffs knew from the outset that their derivative standing theory was legally frivolous. But Plaintiffs' position was not frivolous. Despite the assignments, Plaintiffs are beneficiaries of the NGN Trusts. It was not frivolous to argue that, as a beneficiary entitled to the remainder of the NGN Trusts' assets, Plaintiffs had standing to sue. See Wells Fargo II, 2017 WL 3610511, at *19 ("The NCUAB failed to rectify the standing issue because it believed in good faith that it was the real party in interest with regard to the derivative claims."). Indeed, the court in this very case agreed, giving Plaintiffs the chance to proceed under their derivative theory before the Court of Appeals affirmed a contrary holding.[4]

Defendant's evidence, which consists of internal emails and deposition testimony, does not prove otherwise. Defendant believes that the evidence shows that NCUA knew re-securitizing the toxic assets would forfeit its direct and derivative claims. But it shows no such thing. Certainly, NCUA was aware that re-securitizing the assets might complicate its legal claims. See, e.g., ECF No. 360-2 (email from Robert Rowe of NCUA asking "Do you know if the breaches of reps and warrants claim is negated by us resecuritizing these non agency mortgages in a reremic format? I am being told that this is an issue."). Due to those concerns, NCUA considered alternatives. See Fazio Dep. at 86-89 (ECF No. 360-3). But those alternatives were ultimately abandoned due to legitimate fears that more exotic structures would make the assets unmarketable during a time of financial crisis. Id. None of this supports the conclusion that Plaintiffs deliberately pursued a frivolous theory of derivative standing.

---

[4] Defendant insinuates that the earlier decision is not evidence that Plaintiffs' theory had some non-frivolous merit because it was obtained through fraud. See Def.'s Opp. at 18-19 ("NCUA failed to disclose the Indentures' assignment of the NGN Claims to BNYM and purported to find a right to pursue its derivative claims in the [Delaware Statutory Trust Act]."); see also id. at 9 ("Notably, however, NCUA attached an incomplete copy of the Indenture to its opposition brief and failed to inform Judge Scheindlin that the Indenture's Granting Clause makes clear that the NGN Trusts had assigned the NGN Claims to BNYM."). But the fact that Plaintiffs attached selected portions of the Indenture Agreement, instead of the whole agreement, see ECF No. 38-3, is not enough to support a finding of fraud on the court.

14

Thus, Plaintiffs' motion is not brought in bad faith, and Plaintiffs' motivation is not a barrier to supplementation and substitution.[5]

## III. Undue Delay

Defendant believes that Plaintiffs should have moved to supplement and substitute after U.S. Bank I was issued in February 2016. Because Plaintiffs did not do so, Defendant argues, Plaintiffs' motion is now untimely under both Rule 15 and 17. See Def.'s Opp. at 22-25. That argument is not convincing.

Despite Defendant's arguments, there is no rule that requires a party to abandon a favorable decision whenever a non-precedential and contrary decision is issued by another district court. Such a rule would unnecessarily consume resources and impede the disposition of cases. Indeed, the law of the case doctrine discourages parties from moving for reconsideration—absent compelling circumstances—for that very reason. See Schupak v. Califano, 454 F. Supp. 105, 114 (E.D.N.Y. 1978) ("Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.") (citation omitted).

Instead of making a potentially unnecessary motion, Plaintiffs followed a proper course that conserved resources for both parties and the judiciary. Plaintiffs did not make a potentially unnecessary motion to substitute and supplement. Instead, they appealed the other, unfavorable decision. Once they lost on appeal, Defendant immediately moved to dismiss, and Plaintiffs

---

[5] Defendant also argues that even if Plaintiffs did not act in bad faith, they still cannot substitute and supplement here because their litigation strategy was deliberate. Defendant believes that this is contrary to a requirement in Rule 17 that the moving party must have identified the wrong party in interest out of an "honest mistake." Def.'s Opp. at 17-19. But the Court of Appeals has explicitly found that this is not a requirement for relief under Rule 17. See Klein, 906 F.3d at 218 ("Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants. There is no 'honest mistake' requirement beyond that.").

immediately asked for the opportunity to supplement and substitute under Rule 17. This procedure was the most efficient means of obtaining a precedential decision relevant to this and other actions. Thus, it would be unwise to penalize Plaintiffs here by finding that this efficiency also waived their right to cure defects under Rule 17.

**IV.     Scope**

Finally, Defendant argues that Plaintiffs' motion should be denied because it would require more than a merely formal alteration of the complaint. Def.'s Opp. at 14-17. Defendant is, however, mistaken. The argument rests entirely on a strained reading of one decision, Cortlandt St. Recovery Corp., 790 F.3d at 422, that is inapposite to the issue here.

In Cortlandt, the plaintiff sued to collect money owed on notes issued by the defendant. Id. The plaintiff alleged it had standing because these claims had been assigned to it by various noteholders, but the Court found that the plaintiff had only been granted a power of attorney, not a full assignment of the claims. Id. at 417-18. In the alternative, the plaintiff argued that it should have been allowed, under Rule 17, to obtain a full assignment of the claims in order to cure the defect in standing. Id. at 424. But the Court found that an amendment under Rule 17 would be improper because substituting "the existence of a new and substantively different assignment would require more than a 'merely formal' alteration of the complaint." Id.

Defendant leans heavily on the superficial similarity between that decision and this case. But that reliance is misplaced. In Cortlandt, the Court explicitly did not hold whether an alternative procedure under a different rule—such as supplementation under Rule 15(d)—could have saved the plaintiff's claims. Id. at 424 ("We cannot rule out the possibility that Cortlandt might have avoided these challenging procedural pitfalls through a request for leave to obtain a valid assignment under some other rule of civil procedure."). Since then, at least one other court

16

has found that supplementing a complaint under Rule 15(d) to include a new assignment of claims is sufficient to cure defects in standing. See Wells Fargo II, 2017 WL 3610511, at *19–21. And several others have distinguished Cortlandt on other grounds before allowing plaintiffs to cure substantially similar standing defects with amendments to the complaint. See, e.g., FDIC v. Citibank N.A., No. 15-CV-6574 (ALC), 2017 U.S. Dist. LEXIS 108104, at *7 (S.D.N.Y. July 10, 2017); Digizip.com, Inc. v. Verizon Servs. Corp., 139 F. Supp. 3d 670, 679–80 (S.D.N.Y. 2015); House of Europe Funding I Ltd. v. Wells Fargo Bank, No. 13-CV-519 (RJS), 2015 WL 5190432, at *7 (S.D.N.Y. Sept. 4, 2015). This is consistent with what has historically been an accepted procedure for curing a complaint's jurisdictional defects. See Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522, 1541 (S.D.N.Y. 1991) ("While recognizing that proper recordation is a jurisdictional prerequisite to instituting a copyright infringement suit, defendant fails to see that plaintiffs' recordation problem was cured by its supplemental filing which was allowed by this court pursuant to Fed. R. Civ. P. 15 (d)."); Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp., 524 F. Supp. 615, 619 (E.D.N.Y. 1981) ("There is no question that leave to serve a supplemental pleading should be granted if it cures a jurisdictional defect.") (citing Mathews v. Diaz, 426 U.S. 67 (1976)). Defendant's reliance on Dennis v. J.P. Morgan Chase & Co., 342 F. Supp. 3d 404 (S.D.N.Y. 2018), does not change the Court's conclusion.

Here, Plaintiffs should have the same opportunity. The underlying merits of Plaintiffs' claims will remain unaltered. There is no evidence that NCUA proceeded in bad faith, or that supplementation will prejudice Defendant.[6] Indeed, the complaint's only pertinent flaw is the

---

[6] Defendant argues that, if Plaintiffs' substitution of the Separate Trustee is granted, then it "would have to" file another motion to dismiss. See Def.'s Opp. at 16 ("HSBC would have to file another motion to dismiss raising new statute of limitation defenses, some of which *would necessitate factual discovery* to resolve.") (emphasis added). This simply not true. Any new fact-based defenses raised by the substitution could be, and should be, raised at the summary judgment stage. Defendant is correct that this would require the reopening of party discovery. But any discovery necessary for Defendant's new statute of

reliance on the—now discredited— theory of derivative standing. It is "too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." Foman v. Davis, 371 U.S. 178, 181-82 (1962). Plaintiffs will be allowed to supplement their complaint in order to substitute the Separate Trustee and pursue the underlying merits of their claims. Accord Wells Fargo II, 2017 WL 3610511, at *18.

## CONCLUSION

Plaintiffs' motion to supplement the First Amended Complaint and to substitute Graeme W. Bush as the real party in interest is GRANTED. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 351.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   May 22, 2019
         New York, New York

---

limitations or standing defenses would be extremely limited. Accord Wells Fargo II, 2017 WL 3610511, at *20 ("The substitution of the Separate Trustee will require minimal additional discovery . . . ."). The parties should be able to complete that minimal discovery before the summary judgment briefs are due in June 2021. See ECF No. 362.