## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, *et al*.,

                    Plaintiffs,

    v.

HSBC BANK USA,
NATIONAL  ASSOCIATION,

                    Defendant.

**Case No. 15-cv-2144-LGS-SN**

**MEMORANDUM OF LAW IN SUPPORT OF HSBC BANK USA, N.A.'S
RULE 72 OBJECTIONS AND MOTION TO VACATE
MAGISTRATE JUDGE NETBURN'S MAY 22, 2019 OPINION & ORDER**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 4

      A.     NCUA Created the NGN Trusts and Assigned Claims Held By Those Trusts to BNYM as Indenture Trustee. ................................................................... 4

      B.     NCUA Intentionally Pursued a Flawed Derivative Standing Theory to Circumvent BNYM's Ownership of the RMBS Claims. .......................................... 5

      C.     NCUA Misled This Court by Failing To Disclose That the Indenture Assigned All Claims to BNYM and by Intentionally Attaching an Incomplete Version of the Indenture to Its Opposition Papers To Hide Its Standing Deficiency ..................... 6

      D.     The Court in *U.S. Bank* Rejected NCUA's Derivative Standing Theory. ............. 7

      E.     NCUA Intentionally Delayed Requesting Supplementation and Substitution in this Case. ................................................................................................... 8

STANDARD OF REVIEW .............................................................................................. 9

ARGUMENT .................................................................................................................. 11

I.      NCUA Engaged in Undue Delay and Dilatory Tactics, and Its Belated Request for Supplementation and Substitution Will Impede the Economic and Speedy Resolution of This Case.................................................................................................... 12

II.     NCUA Deliberately and in Bad Faith Delayed Filing Its Motion To Substitute and Amend Despite Its Awareness of the Real Party in Interest:  BNYM............................ 16

III.    NCUA's Proposed Supplementation and Substitution Would Prejudice HSBC and Significantly Delay the Resolution of This Dispute. ....................................... 19

IV.    NCUA's Proposed Substitution Would Be Futile Because Mr. Bush Is Not A Real Party in Interest. ..................................................................................................... 21

CONCLUSION............................................................................................................... 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997) .....21, 22, 23, 24

*Alaska Russ. Salmon Caviar Co. v. M/V MARIT MAERSK*, No. 98 Civ.
7685(DLC), 2000 WL 145124 (S.D.N.Y. Feb. 2, 2000) ........................................14

*AMEX v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002)..................................................10

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) (per curiam)..................................15

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
N.A.*, 2017 WL 3610511 (S.D.N.Y. Aug. 18, 2017)........................................9

*British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 342 F.3d 78 (2d Cir.
2003) ........................................................................................23

*Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533 (S.D.N.Y. 2016)..............................13

*City of N.Y. v. Grp. Health Inc.*, 649 F.3d 151 (2d Cir. 2011).................................12, 13

*Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.a.r.l.*, 790 F.3d 411 (2d Cir.
2015) ....................................................................................21, 22

*Covington v. Kid*, No. 94 Civ. 4234 (WHP), 1999 WL 9835 (S.D.N.Y. Jan. 7,
1999). Regardless, the Opinion & Order ..............................................11

*Davidowitz v. Patridge*, No. 08-cv-6962 (NRB), 2010 WL 1779279 (S.D.N.Y.
Apr. 23, 2010).............................................................................19

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996)................................12, 13

*Del Re v. Prudential Lines, Inc.*, 669 F.2d 93 (2d Cir. 1982)........................................19

*EMI Entm't World, Inc. v. Karen Records, Inc.*, No. 05 Civ. 390 (LAP), 2013 WL
2480212 (S.D.N.Y. June 10, 2013)........................................................14

*Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44 (2d Cir. 1983) ....................................19

*Foman v. Davis*, 371 U.S. 178 (1962) ..........................................................14

*Griffin v. Pasqual*, No. 5:14-cv-1030(MAD/ATB), 2015 WL 1967537 (N.D.N.Y.
Apr. 30, 2015)...............................................................................21

*John Hancock Mut. Life Ins. v. Amerford Int'l Corp.*, 22 F.3d 458 (2d Cir. 1994)...........12, 13, 14

*Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) ..........................21

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015)............................................................21

*Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300 (S.D.N.Y. 1996), *aff'd*, 116 F.3d 465
    (2d Cir. 1997)......................................................................................................16, 19

*Lin v. Toyo Food, Inc.*, No. 12-cv-7392, 2016 WL 4502040 (S.D.N.Y. Aug. 26,
    2016) ...................................................................................................................19, 20

*McCabe v. Trombley*, 867 F. Supp. 120 (N.D.N.Y. 1994) ...........................................................22

*Miller v. Wells Fargo*, 540 F.2d 548 (2d Cir. 1976) .....................................................................24

*Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000)................................................19

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) .........................................................................24

*NCUA v. Deutsche Bank*, No. 14-cv-8919 (S.D.N.Y. July 22, 2016) ............................................9

*NCUA v. HSBC Bank USA, N.A*, 117 F. Supp. 3d 392 (S.D.N.Y. 2015) .......................................7

*NCUA v. U.S. Bank N.A.*, 898 F.3d 243 (2d Cir. 2018)........................................................ passim

*NCUA v. U.S. Bank N.A.*, No. 14-CV-9928 (KBF), 2015 WL 2359295 (S.D.N.Y.
    May 18, 2015).................................................................................................7, 14, 17, 18

*NCUA v. U.S. Bank N.A.*, No. 14-CV-9928 (KBF), 2016 WL 796850 (S.D.N.Y.
    Feb. 25, 2016) ....................................................................................................... passim

*NCUA v. U.S. Bank N.A.*, No. 14-cv-9928 (KBF) (S.D.N.Y. May 11, 2016), ECF
    141.................................................................................................................................8

*NCUA v. Wells Fargo Bank, N.A.*, No. 14-cv-10067 (S.D.N.Y. May 20, 2016),
    ECF 103 .......................................................................................................................8

*Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641 (2d Cir.
    2016) (per curiam) ...................................................................................................13, 14

*Reisner v. GM Corp.*, 511 F. Supp. 1167 (S.D.N.Y. 1981), *aff'd*, 671 F.2d 91 (2d
    Cir. 1982), *cert. denied*, 469 U.S. 858 (1982) .......................................................16, 17, 19

*Royal Park Inv. SA/NV v. HSBC Bank USA, N.A.*, No. 17-CV-7684 (VEC), 2018
    WL 3655781 (S.D.N.Y. Aug. 2, 2018).........................................................................7

*Royal Park Invs. SA/NV v. U.S. Bank N.A.*, 285 F. Supp. 3d 648 (S.D.N.Y. 2018) .....................10

*Ruotolo v. City of N.Y.*, 514 F.3d 184 (2d Cir. 2008) ..................................................................15

*Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992)...............................23

*Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109 (S.D.N.Y. 2005) ....................................................................................................10

*Sprint Commcn's Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) ................................25

*United States v. Pokerstars*, No. 11-cv-2564 (KMW), 2016 WL 4411421 (S.D.N.Y. Aug. 19, 2016), *aff'd sub nom. U.S. v. Cardroom Int'l, LLC*, 726 F. App'x 98 (2d Cir. 2018)..............................................................................12, 16, 19

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995).............................................12

## STATE CASES

*Citibank (South Dakota), N.A. v Martin*, 807 N.Y.S.2d 284 (N.Y. City Civ. Ct. 2005) ....................................................................................................22

## OTHER AUTHORITIES

12 U.S.C. § 1787(b)(14) ............................................................................................2, 5

28 U.S.C. § 636 ..............................................................................................................9

28 U.S.C. § 636(b)(1) .................................................................................................1, 9

Delaware Statutory Trust Act ........................................................................................6

12 Fed. Prac. & Proc. Civ. § 3068.2 (3d ed.)...............................................................9

Federal Rule of Civil Procedure 15 ..................................................................... passim

Federal Rule of Civil Procedure 17 ..................................................................... passim

Federal Rule of Civil Procedure 72 .........................................................1, 9, 10, 11

## INTRODUCTION

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, HSBC Bank USA, N.A. ("HSBC") objects to and asks this Court to vacate Magistrate Judge Netburn's May 22, 2019 Opinion and Order (the "Opinion & Order") [ECF 369], entered on the Electronic Case Files System ("ECF") on May 23, 2019, which granted plaintiff National Credit Union Administration Board as Liquidating Agent's ("NCUA") motion to supplement its First Amended Complaint and to substitute Graeme W. Bush as the Plaintiff under Federal Rules of Civil Procedure 15 and 17.  The Opinion & Order did not result from a run-of-the-mill, timely motion to amend; rather, this dispute arises from NCUA's exceptionally dilatory motion to entirely change the real party in interest for certain of its claims, which not only comes years after NCUA actively misled the Court about its standing to bring these claims, but also disposes of certain of HSBC's defenses.  The Opinion & Order, which granted NCUA's motion, should be vacated because it is contrary to law and overlooks relevant facts.  If the Opinion & Order is allowed to stand, HSBC will be materially prejudiced in defending against NCUA's claims, and NCUA will be rewarded for its misconduct.

NCUA is a sophisticated entity with private counsel that deliberately chose to rely on a groundless derivative-standing theory to pursue claims on RMBS securities that it had re-securitized in 2010 through the NCUA Guaranteed Notes ("NGN") Program.  NCUA purported to bring claims on behalf of the NGN Trusts, despite knowing—*since 2010*—that the Trustee for the NGN Trusts, Bank of New York Mellon ("BNYM"), not the NGN Trusts themselves, owned these claims ("NGN Claims").  When it brought claims against HSBC in 2015, NCUA hid from the Court the materially relevant portions of the Indentures governing the NGN Trusts, which clearly assign the claims to BNYM and deprive NCUA of standing to bring claims.  Indeed, as the Second Circuit recognized, "[r]epresented, as it was, by able counsel, NCUA . . . knew, or

should have known . . . [that] the NGN Trusts no longer possessed the claims." *NCUA v. U.S. Bank N.A.*, 898 F.3d 243, 257 (2d Cir. 2018) ("*U.S. Bank IV*"). NCUA nevertheless proceeded as it did in order to control the litigation and potentially take advantage of NCUA's extender statute of limitations, 12 U.S.C. § 1787(b)(14), which does not apply to BNYM or NCUA's proposed "Separate Trustee."

Now, faced with numerous court decisions, including a Second Circuit opinion, definitively rejecting NCUA's derivative standing theory, NCUA asks this Court to allow it to alter its complaint by adding a completely new plaintiff—Graeme Bush—who NCUA now claims is the real party in interest. The Court should deny NCUA's request for a host of reasons.

First, NCUA's request is untimely and a result of its own unsound litigation strategy. HSBC opposed NCUA's standing from the beginning of this litigation, and NCUA knew for years before filing this suit that it lacks standing to bring these claims, because it transferred ownership in the RMBS to BNYM. Despite this knowledge, NCUA made a deliberate tactical choice to bring derivative claims ***over four years ago***.

Not only did NCUA know about the assignment to BNYM when it filed this case, it refused to abandon its position even as other district courts (who, unlike the Court in this case, had full knowledge of the terms of the Indentures) repeatedly rejected its derivative-standing arguments. NCUA waited years to attempt to supplement and substitute, doing so only after HSBC stated its intention to file a motion for judgment on the pleadings following the Second Circuit's decision. NCUA's belated request to supplement its complaint to allege an after-the-fact assignment of the NGN Claims from BNYM to its outside lawyer, Graeme Bush, comes years after party discovery in the case closed and after years of silence from NCUA on this issue—despite one prior amendment and one prior supplementation of its complaint in this case.

2

Indeed, during this period of delay, in full awareness of the baselessness of its standing theory, NCUA moved to supplement and substitute in three other cases, but took no action to do so here. There is no excuse for NCUA's delay.

Second, NCUA's standing arguments were advanced in bad faith.  It concealed from this Court the material fact of the assignment of rights to BNYM, and went so far as to omit the relevant portions of the Indenture that it submitted to the Court.  It did so even after another district court admonished NCUA that the full Indentures were critical to resolving the issues surrounding its standing.  This is not simply a questionable legal strategy on which reasonable minds could differ.  If not an intentional effort to mislead the Court (it likely was), the decision by NCUA and its well-compensated private counsel to submit only portions of the operative Indentures while intentionally omitting the key provisions that were fatal to NCUA's position was, at the very least, a sharp tactic that fell far short of the candor expected before a tribunal.

Third, permitting NCUA to belatedly supplement and substitute now would unfairly prejudice HSBC, which spent significant resources conducting long-closed lengthy discovery that would need to be re-opened and re-done in light of a completely new party in interest.

Finally, NCUA's proposal would be futile because Mr. Bush is not, in fact, the real party in interest with respect to the NGN Claims.  Pursuant to the Indentures, BNYM is the only real party in interest that has standing to bring the NGN Claims.  The Instrument of Appointment and Acceptance ("IAA") executed on August 29, 2018 did nothing to change that.  *See* ECF 353-1.

## BACKGROUND

### A.   NCUA Created the NGN Trusts and Assigned Claims Held By Those Trusts to BNYM as Indenture Trustee.

Following the 2008 financial crisis, NCUA in its capacity as Liquidating Agent[1] placed a number of failing corporate credit unions ("CCUs") into conservatorship and liquidation.  First Am. Verified Deriv. Compl. (Aug. 19, 2015) ("FAC") ¶ 24, ECF 65.  As part of the liquidation process, NCUA stepped into the shoes of the CCUs and succeeded to their assets, including claims related to RMBS securities owned by the CCUs.   In 2010 and 2011, however, NCUA re-securitized many of the securities through a series of NCUA Guaranteed Notes Trusts ("NGN Trusts").  FAC ¶ 27.   As part of that process, NCUA sold most of the CCUs' RMBS certificates to the NGN Trusts, which in turn sold Notes to investors ("Noteholders").

Each of these re-securitizations involved, among other documents and agreements, a Trust Agreement and an Indenture.  The Trust Agreement established each NGN Trust as a Delaware Statutory Trust and assigned the securities and related claims to the trust.  FAC ¶¶ 28, 45; Trust Agreement §§ 2.04, 2.06, ECF 65-3.  The Indentures subsequently assigned the securities and related claims to BNYM as Indenture Trustee.  Indenture at 5, ECF 65-2.  Specifically, the "Granting Clause" in each Indenture assigned to BNYM "all present and future claims, demands, causes, and choses in action in respect to the [RMBS certificates]" and "all

---

[1] Counsel for NCUA frequently attempts to characterize NCUA as a federal agency to gain advantage in this litigation, but NCUA's involvement in this case is solely as a private entity acting in its capacity as Liquidating Agent.  In a letter to Congress, NCUA explained at length its status as a private entity to justify its $1 billion-plus payments to private counsel.  Borden Decl. Ex. A at 7, ECF 360 (2/6/2013 NCUA OIG letter to Hon. Darrell E. Issa) ("[W]hen NCUA serves as . . . Liquidating Agent it is no longer acting as a Federal agency but rather, as a private entity.").

proceeds of the foregoing." *Id.*  The Indentures do not authorize NCUA—in any capacity—to institute litigation or to compel BNYM to do so.

**B.**     **NCUA Intentionally Pursued a Flawed Derivative Standing Theory to Circumvent BNYM's Ownership of the RMBS Claims.**

From the outset of the NGN Trust program, NCUA recognized that it would lose standing to bring claims related to the CCUs' RMBS certificates by re-securitizing them and transferring all rights to the Indenture Trustee.[2]  NCUA was willing to divest itself of standing because it made the financial and legal assessment that re-securitization of the certificates was the preferable course of action, and so, working with sophisticated attorneys and investment bankers, it created the NGN Trusts and transferred all rights, title, and claims in the RMBS certificates to the NGN Indenture Trustee, BNYM.

Furthermore, for many years NCUA took no steps to pursue any claims against RMBS trustees for their purported failure (based on novel theories of liability) to initiate repurchase actions.  It was only in mid-2014, after other investors began suing RMBS trustees, that NCUA filed its own suits against trustees, but not against HSBC.  These initial lawsuits did not include derivative standing allegations, as NCUA claimed to sue as liquidating agent for recoveries that would flow to the CCUs' estates.  After the defendants in those cases pointed to NCUA's standing deficiencies, NCUA amended the complaints in 2015 to include a newly minted derivative standing theory.  At that time, NCUA also filed its initial complaint against HSBC.

---

[2] For example, in July 2011, NCUA analyst Robert Rowe told an industry consultant that NCUA believed that its ability to bring "breaches of reps and warrants claim[s] is negated by us re-securitizing these non-agency mortgages."  Borden Decl. Ex. B, ECF 360 (July 2011 email exchange between Russell Albers of Digital Risk and Robert Rowe of NCUA).  Although NCUA was examining "every possible avenue" for recovery at that time, it had "a fair degree of skepticism" that repurchase-based remedies "would ultimately be . . . successful. *Id.* at 88–89.

The basis of NCUA's flawed derivative standing theory was that NCUA could sue "in the right of, and on behalf of . . . the NGN Trusts" because the NGN Trusts owned the claims. Complaint (Mar. 20, 2015) ¶ 31, ECF 1.  As the Second Circuit later recognized, NCUA advanced this theory despite the fact that "represented, as it was, by able counsel, NCUA . . . knew, or should have known . . . [that] the NGN Trusts no longer possessed the claim."  *U.S. Bank IV*, 898 F.3d at 257.  In fact, NCUA did everything it could simply to pretend the transfer of claims to BNYM did not exist.  It based its derivative standing argument on the Delaware Statutory Trust Act ("DSTA"), despite that fact (fully understood by NCUA) that the Indentures assigning the claims to BNYM are governed by New York law and are not subject to the DSTA. Shortly before filing its Complaint against HSBC, NCUA made a last-minute attempt to add the appearance of legitimacy to its position with a letter to BNYM making the absurd, untimely, and unrealistic demand that BNYM file a lawsuit within 12 days and purporting to have the right to sue if BNYM failed to comply.  ECF 38-1.  In response, BNYM stated that its position was "neutral" with respect to NCUA's standing to sue.  Lundberg Decl., ECF 65-9.  As the Second Circuit would ultimately confirm, however, there was no basis for NCUA even to make such a demand, much less to sue if its demand was not met, so BNYM's purported acquiescence was legally meaningless.  *U.S. Bank IV*, 898 F.3d at 253–54.

**C. NCUA Misled This Court by Failing To Disclose That the Indenture Assigned All Claims to BNYM and by Intentionally Attaching an Incomplete Version of the Indenture to Its Opposition Papers To Hide Its Standing Deficiency.**

When HSBC raised the standing issue in this case with a motion to dismiss, NCUA not only failed to inform Judge Scheindlin that the Indenture assigned all claims to BNYM, it attached an incomplete copy of the Indenture to its opposition papers, which omitted the Granting Clause.  Libra Decl., ECF 38-3.

Based on this incomplete record strategically constructed by NCUA, Judge Scheindlin incorrectly concluded that NCUA had derivative standing. *NCUA v. HSBC Bank USA, N.A*, 117 F. Supp. 3d 392, 399 (S.D.N.Y. 2015). This ruling was based on the Court's misimpression that the NGN Claims continued to be held by the NGN Trusts, *id.*, an error that since has been recognized by other district courts. *See, e.g.*, *Royal Park Inv. SA/NV v. HSBC Bank USA, N.A.*, No. 17-CV-7684(VEC), 2018 WL 3655781, at *4 n.7 (S.D.N.Y. Aug. 2, 2018) (observing that J. Scheindlin "did not analyze the relevant conveyances" and "may have [ruled on derivative standing] under the misapprehension that the NGN Trusts held RMBS certificates").

### D.    The Court in *U.S. Bank* Rejected NCUA's Derivative Standing Theory.

Unlike Judge Scheindlin, the judge in NCUA's parallel case against U.S. Bank had access to the complete Indenture and rejected NCUA's derivative standing theory. At first, NCUA also tried to hide the Indenture from the court in that case. But in an initial ruling, Judge Forrest identified the "core standing issue" as whether NCUA had divested itself of the NGN claims and recognized that she could not answer that question without the Indenture. *NCUA v. U.S. Bank N.A.*, No. 14-CV-9928 (KBF), 2015 WL 2359295, at *4 (S.D.N.Y. May 18, 2015) ("*U.S. Bank I*"). Judge Forrest dismissed the complaint and specifically admonished NCUA that the NGN Indentures "are relevant to the [standing] issues raised on this motion and should be included as part of any proposed amendment." *Id.* at *4 & *4 n.3. Only then, when forced, did NCUA file a Second Amended Complaint with the complete Indenture attached. Of importance here, *U.S. Bank I* was issued while briefing on HSBC's motion to dismiss remained ongoing. Nevertheless, and despite Judge Forrest's admonition, NCUA never provided Judge Scheindlin with a complete copy of an NGN Indenture, or sought to correct the misimpression created by the excerpted copy it previously filed in this case.

After NCUA filed its Second Amended Complaint in the U.S. Bank case, it advanced the same derivative standing arguments that it put forward in this case, and the court rejected them, holding that BNYM, not the NGN Trusts, held the claims under the terms of the Indenture. *NCUA v. U.S. Bank N.A.*, No. 14-CV-9928 (KBF), 2016 WL 796850, at *8–10 (S.D.N.Y. Feb. 25, 2016) ("*U.S. Bank II*").  The court also concluded that BNYM's purported acquiescence to NCUA's suit was legally meaningless.  *Id.*

### E.  NCUA Intentionally Delayed Requesting Supplementation and Substitution in this Case.

Over two years ago, and a mere two months after Judge Forrest rejected NCUA's derivative standing argument (*U.S. Bank II*), NCUA requested the same supplementation-and-substitution maneuver in the *U.S. Bank* case that it now belatedly attempts in this case.  **Even two years ago**, however, Judge Forrest denied NCUA's request as **untimely**, explaining that NCUA should have moved to substitute a new plaintiff "far earlier."  Mem. & Order at 3, *NCUA v. U.S. Bank N.A.*, No. 14-cv-9928 (KBF) (S.D.N.Y. May 11, 2016), ECF 141 ("*U.S. Bank III*").   On August 2, 2018, the Second Circuit affirmed Judge Forrest's rejection of the NCUA standing arguments.  *U.S. Bank IV*, 898 F.3d at 245.  The holding was based on a straightforward reading of the Indentures.  *Id.* at 252.  The court also held that Judge Forrest was within her discretion to deny NCUA's request to supplement and substitute as untimely.  *Id.* at 256–58.

Just nine days after Judge Forrest denied NCUA's motion to supplement and substitute in *U.S. Bank III*, NCUA sought leave to file a "fallback motion" to take the same step in its case against Wells Fargo, in the event that court also decided NCUA lacked derivative standing. *NCUA v. Wells Fargo Bank, N.A.*, No. 14-cv-10067 (S.D.N.Y. May 20, 2016), ECF 103.  NCUA specifically emphasized that it wanted "to avoid any concerns regarding timeliness."  Judge Failla did not allow the "fallback motion," but stated she would allow NCUA to raise the issue

later and that she would not consider the delay unreasonable.  *See* June 28, 2016 Hr'g Tr., No.

14-cv-10067 (ECF 310-1) at 22:18–23:20.[3]  When Judge Failla later rejected NCUA's derivative

standing theory, she permitted supplementation and substitution, noting specifically that NCUA

had proactively addressed the timeliness issue by requesting leave to file its fallback motion

nearly a year earlier.  *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo

Bank, N.A.*, 2017 WL 3610511, at *19 (S.D.N.Y. Aug. 18, 2017).

NCUA took no similar step here.  Instead, in the face of multiple decisions showing that

Judge Scheindlin had arrived at the wrong conclusion on derivative standing based on NCUA's

intentional omissions, NCUA did nothing for more than a year and a half.

## <u>STANDARD OF REVIEW</u>

A district judge retains the ultimate responsibility for the disposition of a district court

case and consequently may accept, reject, or modify any order made by a magistrate judge.  *See*

28 U.S.C. § 636.  Under Federal Rule of Civil Procedure 72, the standard of review the Court

applies to a ruling by a magistrate judge turns on whether the magistrate's decision is

"dispositive of a claim or defense of a party."  *Id.* R. 72(a)–(b).  For non-dispositive rulings, Rule

72(a) provides that a magistrate judge's order may be modified or set aside where the district

judge finds the order to be "clearly erroneous or contrary to law."  *Id.* R. 72(a).  For dispositive

rulings, on the other hand, this Court reviews the ruling *de novo*.  *Id.* R. 72(b); *see also* 28 U.S.C.

§ 636(b)(1).

Rule 72 does not define the term dispositive, but rather courts make such a determination

according to the impact of the ruling on the merits of the case.  *See generally* 12 Fed. Prac. &

---

[3] NCUA wrote a similar letter to the court while the motion to dismiss was pending in its action
against Deutsche Bank.  *NCUA v. Deutsche Bank*, No. 14-cv-8919 (S.D.N.Y. July 22, 2016)
(ECF 83).  NCUA never filed anything similar in this case.

Proc. Civ. § 3068.2 (3d ed.) ("[Rule 72]'s approach permits the courts to reach commonsense decisions rather than becoming mired in a game of labels.").  Here, as the Opinion & Order acknowledged, NCUA moved for leave to file a supplemental complaint and substitute the separate trustee as plaintiff for the NGN claims expressly to cure a defect in standing.  *See* Op. & Order at 4, ECF 369.  HSBC had opposed NCUA's baseless derivative-standing from the outset of the litigation and pled affirmative defenses to standing on that basis.  *See* Answer to Am. Compl. at 100, 106, ECF 68.  After the Second Circuit's ruling in *U.S. Bank IV*, HSBC requested leave to move for judgment on the pleadings based on NCUA's lack of standing, ECF 341, a motion NCUA conceded was dispositive.  Only then did NCUA move to supplement the complaint and substitute the separate trustee in an attempt to belatedly correct its lack of standing and thereby necessarily dispose of HSBC's defenses on that basis.[4]

Because the Opinion & Order disposed of these affirmative defenses to standing, *de novo* review under Rule 72(b) is the appropriate standard.  Courts in this district have treated orders that strike affirmative defenses as "clearly dispositive of a defense of a party." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005) (internal quotation marks omitted); *see also Royal Park Invs. SA/NV v. U.S. Bank N.A.*, 285 F. Supp. 3d 648, 653 (S.D.N.Y. 2018).  Accordingly, "orders striking pleadings or affirmative defenses" are reviewed "under a *de novo* standard, treating them as dispositive because the party is foreclosed from asserting the claim or claims in the litigation." *AMEX v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002).[5]

---

[4] The Order & Opinion is dispositive of the defenses challenging derivative standing on the grounds resolved by the Second Circuit in *NCUA v. U.S. Bank, N.A.*, 898 F.3d 243 (2d Cir. 2018), but it does not extend to defenses to standing that HSBC may assert on other grounds.

[5] Although there is case law suggesting that a magistrate judge's resolution of a motion for leave to amend warrants review under the "clearly erroneous or contrary to law" standard of Rule

## ARGUMENT

This Court should vacate the Opinion & Order and reject NCUA's request to supplement and substitute under Rules 17 and 15.  First, NCUA's request is untimely and the direct result of NCUA's engagement in undue delay and dilatory tactics.  NCUA could have and should have raised its request more than two years ago, at the same time that NCUA did so in both *Wells Fargo* and *Deutsche Bank*.[6]  Second, NCUA deliberately and in bad faith delayed filing its motion to supplement and substitute despite its awareness since 2010 that BNYM was the real party in interest and, indeed, it went so far as to actively hide the truth from the Court by submitting only partial copies of the Indentures.  Third, NCUA's proposed supplementation and substitution would unfairly prejudice HSBC, which spent years conducting discovery with the understanding that NCUA was the party alleging standing and status as the real party in interest.  Discovery closed over two years ago and, if NCUA's motion is permitted, will need to be re-opened—at significant burden to HSBC.  Fourth, NCUA's proposed supplementation and substitution are futile because Mr. Bush lacks standing to bring the NGN claims.

---

72(a), such cases are inapposite here because they do not address circumstances where resolution of the motion disposed of a claim or a defense.  Where resolution of a motion does foreclose claims or defenses, it is considered dispositive.  *See, e.g., Covington v. Kid*, No. 94 Civ. 4234(WHP), 1999 WL 9835, at *2 (S.D.N.Y. Jan. 7, 1999).  Regardless, the Opinion & Order should be set aside under Rule 72(a) as well because it is clearly erroneous and contrary to law.

[6] Moreover, NCUA's motion invokes both Rules 15(d) and 17(a)(3) in its attempt to allege facts that occurred <u>after</u> the filing of NCUA's complaint.  There is no precedent for this two-step dance, and the Opinion & Order provides no basis for concluding it "is consistent with what has historically been an accepted procedure for curing a complaint's jurisdictional defects."  Op. & Order at 17.  The Opinion & Order's cited cases do not involve both Rules 15(d) and 17(a)(3).

I.     **NCUA Engaged in Undue Delay and Dilatory Tactics, and Its Belated Request for Supplementation and Substitution Will Impede the Economic and Speedy Resolution of This Case.**

On September 12, 2018, NCUA filed its belated request to supplement its First Amended Complaint to allege an after-the-fact assignment of the NGN Claims from BNYM to its outside lawyer, Graeme Bush.  Significantly, NCUA's request to make these substantive changes was filed *over eight years* after NCUA assigned the NGN claims to BNYM and *over 18 months* after NCUA learned on February 25, 2016, that its derivative standing argument lacked merit.  *U.S. Bank II*, 2016 WL 796850, at *8–10.  Of particular importance, party discovery closed June 16, 2017—*over two years ago*—and would need to be re-opened if NCUA is allowed to belatedly supplement and substitute.  Furthermore, NCUA filed a supplemental amended complaint in this action on January 5, 2018, but neglected to include the supplementation and substitution it now seeks despite being well aware of its need to remedy standing deficiencies.  ECF 305.

A court should not grant a motion to supplement a pleading where there is undue delay or dilatory tactics, or where the filing will deter the economic and speedy disposition of the controversy.  *See, e.g.*, *Zahra v. Town of Southold*, 48 F.3d 674, 685–86 (2d Cir. 1995).  A plaintiff "unduly delays" when it could have made the supplementation much sooner.  *See, e.g.*, *John Hancock Mut. Life Ins. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (four-month delay cause for denial of leave to amend); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) ("ample prior opportunity" to amend claim cause for denial of leave to amend); *United States v. Pokerstars*, No. 11-cv-2564 (KMW), 2016 WL 4411421, at *6 (S.D.N.Y. Aug. 19, 2016) ("[D]enial of leave to amend is proper when a party attempts to assert new facts or theories that it could have raised sooner."), *aff'd sub nom. U.S. v. Cardroom Int'l, LLC*, 726 F. App'x 98 (2d Cir. 2018).  Courts have denied requests pursuant to both Rules 15 and 17 under circumstances analogous to NCUA's delay here.  *See, e.g.*, *City of N.Y. v. Grp. Health Inc.*, 649

F.3d 151, 158 (2d Cir. 2011) (affirming denial of leave to amend where plaintiff knew about the issue long before moving to amend); *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543–44 (S.D.N.Y. 2016) ("[A] district court plainly has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant") (alterations and internal quotation marks omitted); *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 642 (2d Cir. 2016) (per curiam).

The Opinion & Order gave short shrift to the above-cited case history and failed to square its decision with the case law.  Instead, the Opinion & Order erroneously found that NCUA had no obligation to make its motion at an earlier point in time.  Op. & Order at 15, ECF 369.  This finding is directly contrary to case law that explicitly holds that motions to supplement or amend should be denied where there is undue delay or dilatory tactics, or the filing would impair the economic and speedy disposition of the case.  *John Hancock Mut. Life Ins. Co.*, 22 F.3d at 462; *De Jesus*, 87 F.3d at 72.  NCUA had an affirmative obligation to make its motion at a much earlier time and failed to comply with its obligation here.  *See City of N.Y.*, 649 F.3d at 158.

### A. NCUA knew since at least February 2016 that its standing theory lacked merit.

HSBC opposed NCUA's standing from the beginning of this litigation and, as noted above, NCUA knew for years that its derivative standing theory was deficient.  *See, e.g.*, *U.S. Bank II*, 2016 WL 796850, at *8–10 (S.D.N.Y. Feb. 25, 2016); *U.S. Bank III*, No. 14-cv-9928 (KBF) (S.D.N.Y. May 11, 2016), ECF 141 at 3.  Nevertheless, NCUA unreasonably waited to initiate any supplementation and substitution in this case.  NCUA was not entitled to delay seeking to supplement and substitute.  *See City of N.Y.*, 649 F.3d at 158.  Courts have rejected motions like NCUA's on much shorter periods of delay than that involved in this case.  *John*

*Hancock Mut. Life Ins. Co.*, 22 F.3d at 462 (four-month delay); *EMI Entm't World, Inc. v. Karen Records, Inc.*, No. 05 Civ. 390 (LAP), 2013 WL 2480212, at *3 (S.D.N.Y. June 10, 2013) (six-month delay); *Alaska Russ. Salmon Caviar Co. v. M/V MARIT MAERSK*, No. 98 Civ. 7685(DLC), 2000 WL 145124, at *4–5 (S.D.N.Y. Feb. 2, 2000) (twelve-month delay); *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 642 (2d Cir. 2016) (per curiam) (eighteen-month delay).

### B. Despite filing other amendments and supplements to its complaint in this matter, NCUA repeatedly failed to raise its new standing theory.

Further exacerbating NCUA's undue delay is the fact that NCUA sought to amend its complaint on January 5, 2018 [ECF 305], but failed to address the supplementation and substitution it now seeks.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is proper where party demonstrated "repeated failure to cure deficiencies by amendments previously allowed").  NCUA cannot argue in good faith that it was unaware of the need to address its standing deficiencies in January 2018.  To the contrary, NCUA already had accumulated at least three unfavorable decisions discussing its standing deficiencies at length. *See, e.g.*, *U.S. Bank I*, 2015 WL 2359295, at *4 (S.D.N.Y. May 18, 2015); *U.S. Bank II*, 2016 WL 796850, at *8–10 (S.D.N.Y. Feb. 25, 2016); *U.S. Bank III*, No. 14-cv-9928 (KBF) (S.D.N.Y. May 11, 2016), ECF 141 at 3.  Nevertheless, NCUA intentionally turned a blind eye toward remedying its standing issue, even while it made other amendments to its complaint.  NCUA was obligated to timely move to supplement and it clearly failed to do so here, despite having a continuous opportunity to do so.

**C.  *NCUA waited until party discovery had been long concluded before it filed its motion to supplement and substitute.***

NCUA's intentional delay also significantly affects the economic and speedy resolution of this case.  Party discovery closed on June 16, 2017, and NCUA waited to file its motion to supplement and substitute until well over a year later on September 12, 2018.  Discovery will need to be re-opened if NCUA is allowed to belatedly supplement and substitute.  Such discovery will necessitate substantial additional discovery and briefing regarding the circumstances of Mr. Bush's appointment, his standing to bring the NGN Claims, the timeliness of his claims, the prior decision by BNYM not to pursue these claims, and other defenses that HSBC may raise in response to these new factual allegations.

Nevertheless, the Opinion & Order erroneously claimed that NCUA's dilatory conduct somehow "conserved" the court's and the parties' resources.  Op. & Order at 15.  This conclusion entirely ignores the significant inefficiency in re-opening discovery at this late stage.

Given NCUA's inexcusable delay and previous opportunities to request to supplement and substitute in this case, this Court should vacate the Opinion & Order and deny NCUA's belated request.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (upholding denial of leave to amend where plaintiff's delay was "inexcusable given the previous opportunities to amend, and the defendants' burden and prejudice"); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (per curiam) (where plaintiff had "two previous opportunities to amend," the district court did not abuse its discretion in denying plaintiff "yet another bite at the proverbial apple").  With the known risk of a dismissal on untimeliness grounds, it is shocking that NCUA entirely failed to promptly attempt to remedy its standing deficiencies here.

II.     **NCUA Deliberately and in Bad Faith Delayed Filing Its Motion To Substitute and
        Amend Despite Its Awareness of the Real Party in Interest:  BNYM.**

NCUA's actions were also deliberately tactical and done in bad faith, which separately

bars supplementation and amendment under Rules 15 and 17.  *See Klein ex rel. Qlik Techs., Inc.*,

906 F.3d 215, 218 (2d Cir. 2018), *cert. dismissed sub nom. Cadian Capital Mgmt., LP v. Klein*,

139 S. Ct. 1406 (2019).  Specifically, NCUA knew the identity of the real party in interest at the

commencement of this lawsuit, but made a deliberate choice to hide that fact from the Court and

to pursue its claims under an alternative—and deficient—theory.  Moreover, when NCUA could

no longer hide the fact that it was not the real party in interest, NCUA nonetheless intentionally

delayed remedying its deficient theory for years.

Bad faith is indicated where "the proposed pleading [i]s an attempt to forestall a ruling

against the plaintiffs [on their original claims].  Such a motivation for a new complaint would

clearly justify denial of permission to file it."  *Reisner v. GM Corp.*, 511 F. Supp. 1167, 1172

(S.D.N.Y. 1981), *aff'd*, 671 F.2d 91 (2d Cir. 1982), *cert. denied*, 469 U.S. 858 (1982); *see also*

*Pokerstars*, 2016 WL 4411421, at *6 ("where it appears that a plaintiff's purpose in asserting a

new claim is his or her anticipation of an adverse ruling on the original claims," amendment

should be denied); *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 304 (S.D.N.Y. 1996) (denying

leave to amend when "circumstances suggest that the request for leave to amend reflects an

evolutionary development in plaintiffs' case"), *aff'd*, 116 F.3d 465 (2d Cir. 1997).

Here, NCUA not only knew about the assignment to BNYM when it filed this case, it

saw other district courts (which, unlike the Court in this case, had full knowledge of the terms of

the Indentures) repeatedly reject its derivative-standing arguments.[7]  Nevertheless, NCUA waited

_____

[7] That NCUA maintained the position that it had standing to sue on behalf of the NGN Trusts
further evinces bad faith in light of the fact that the central allegation of its lawsuit against HSBC
is that HSBC failed to commence putback litigation that only HSBC, as trustee, had standing to

years to attempt to supplement and substitute, doing so only after HSBC promptly announced its intention to file a motion for judgment on the pleadings following the Second Circuit's decision. *See* ECF 341.  "Such a motivation"—to forestall a ruling against NCUA—"clearly justif[ies] denial" of NCUA's motion under the case law.  *Reisner,* 511 F. Supp. at 1172.

The Opinion & Order did not account for the case law or the facts.  Instead, the Opinion & Order solely relied on an August 21, 2017 decision in which Judge Failla initially found that NCUA "believed in good faith that it was the real party in interest with regard to derivative claims."  Op. & Order at 14, ECF 369.  The Opinion & Order entirely ignores that there have been at least four separate decisions explaining, at length, why NCUA's derivative standing argument was patently deficient.  *See, e.g.*, *U.S. Bank I*, 2015 WL 2359295, at *4; *U.S. Bank II*, 2016 WL 796850, at *8–10; *U.S. Bank III*, No. 14-cv-9928 (KBF), ECF 141 at 3; *U.S. Bank IV*, 898 F.3d 243.  Indeed, the Second Circuit specifically explained that NCUA advanced its derivative standing theory despite the fact that "[r]epresented, as it was, by able counsel, NCUA . . . knew, or should have known . . . [that] the NGN Trusts no longer possessed the claims."  *U.S. Bank IV*, 898 F.3d at 257.

The Opinion & Order also incorrectly claims that "as a beneficiary entitled to the remainder of the NGN Trusts' assets" it was "not frivolous" for NCUA to argue that it "had standing to sue."  Op. & Order at 14, ECF 369.  Again, this ignores NCUA's litigation history and the fact that NCUA knew before it even initiated this litigation from the Indenture Agreement (which it hid from the Court) that BNYM was the real party in interest.

---

pursue on behalf of the RMBS trusts.  When NCUA resecuritized assets and made BNYM the trustee, it knew that BNYM, as trustee, was the party with standing to assert the NGN Claims.

The Opinion & Order further includes no reasoning for its conclusion that NCUA's actions were not in bad faith and gives short shrift to NCUA's most egregious conduct:  its deliberate attachment of only specific portions of the Indenture to its opposition papers in this case in an effort to hide the fact that it did not have standing to sue.  Op. & Order at 14 n.4, ECF 369.  NCUA and its outside counsel, who have netted over $5.1 billion in settlements relating to its RMBS claims, are sophisticated.  It is unreasonable to believe that NCUA and its outside counsel accidentally omitted the Indenture's Granting Clause, which makes clear that the NGN Trusts had assigned the NGN Claims to BNYM, from its original filing.  *See* Dkt. 38-3.  It is equally unreasonable to believe that NCUA and its counsel did not understand that the Indenture's Granting Clause made BNYM the real party in interest in this litigation.

In fact, the same day that NCUA filed its opposition to HSBC's motion to dismiss on standing grounds, which included the partial Indenture omitting the granting clause, Judge Forrest in the *U.S. Bank* matter issued her initial opinion dismissing the case on standing grounds.  *U.S. Bank I*, 2015 WL 2359295, at *1.  She specifically admonished NCUA that the NGN Indentures "are relevant to the [standing] issues raised on this motion and should be included as part of any proposed amendment." *Id.* at *4 n.3.  NCUA unquestionably knew at that point the entire Indenture, including the Granting Clause, was relevant to standing because it included a complete copy when it filed its Amended Complaint in *U.S. Bank*.  If NCUA's decision to omit crucial parts of the NGN Indenture in this case were anything other than deliberate concealment, NCUA would have corrected that omission after Judge Forrest's opinion issued on May 18, 2015, before briefing on HSBC's motion to dismiss was complete.  It could have submitted a complete copy, for instance, with its sur-reply, filed over two months after Judge Forrest's decision.  ECF 48 (July 23, 2015).  Instead, NCUA continued to deliberately

avoid raising the material fact that BNYM owned the rights to the claims.  *See*, *e.g.*, Mem. in

Opp. to Mot. to Dismiss, ECF 37 at 1–2 (stating that the "governing agreements for the NGN

Trusts authorize" BNYM to bring claims on behalf of the NGN Trusts, instead of explaining that

the Indenture assigned ownership of the claims to BNYM).

 The Court should not permit NCUA to benefit now from its bad-faith tactical decisions

and intentional concealment of the real party in interest.  *Reisner*, 511 F. Supp. at 1172;

*Pokerstars*, 2016 WL 4411421, at *6; *Lee*, 916 F. Supp. at 304; *see also Del Re v. Prudential*

*Lines, Inc.*, 669 F.2d 93, 96–97 (2d Cir. 1982) (denying relief where the law was "explicit and

unequivocal" that plaintiff did not hold the claims he originally sought to assert).

### III. NCUA's Proposed Supplementation and Substitution Would Prejudice HSBC and Significantly Delay the Resolution of This Dispute.

 "The concepts of delay and undue prejudice are interrelated—the longer the period of

unexplained delay, the less will be required of the non-moving party in terms of showing of

prejudice."  *Davidowitz v. Patridge*, No. 08-cv-6962 (NRB), 2010 WL 1779279, at *2 (S.D.N.Y.

Apr. 23, 2010) (citing *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46–47 (2d Cir. 1983)).

Here, HSBC's burden of establishing prejudice is minimal because of the extremely long period

of delay and the fact that NCUA has no valid explanation for its dilatory conduct.  To determine

"what constitutes 'prejudice,'" courts consider whether the new claims would "require the

opponent to expend significant additional resources to conduct discovery and prepare for trial" or

would "significantly delay the resolution of the dispute."  *Monahan v. N.Y.C. Dep't of Corr.*, 214

F.3d 275, 284 (2d Cir. 2000); *accord Lin v. Toyo Food, Inc.*, No. 12-cv-7392, 2016 WL

4502040, at *1 (S.D.N.Y. Aug. 26, 2016).

 NCUA's proposed new claims—belatedly pursued years late—raise a host of legal and

factual issues for HSBC and the Court, including whether Mr. Bush properly has standing and

whether his claims are timely.  A new round of discovery will be necessary, including regarding

the circumstances of Mr. Bush's appointment, which will require the re-opening of party

discovery that closed nearly two years ago.  If NCUA is permitted to file its new claims, HSBC

will be prejudiced in terms of the time and resources it will require to conduct a new round of

discovery and review a completely new set of materials related to standing.  The parties already

spent over two years conducting discovery, including HSBC's review of ***4,907,389 documents***

and ***17,758,809 pages*** of NCUA's production; eighteen fact and 30(b)(6) depositions taken by

HSBC of NCUA and the credit unions, as well as their current and former employees; and

dozens of discovery disputes, many of which were raised before and decided by the Court.  All

of this work was based on the premise that NCUA claimed derivative standing to bring certain of

its claims.  If NCUA is permitted to belatedly change course and pursue a completely new

standing argument, HSBC will be prejudiced, not just by the fact that discovery will need to be

reopened and additional discovery will need to be taken, but also because HSBC's previous and

extensive discovery was based on a version of NCUA's complaint that will be significantly

altered—causing a significant waste of HSBC's time and resources.  Similarly, the Court will be

burdened by a new round of anticipated party disputes regarding the scope of necessary

discovery.  These additional delays and the burden both on HSBC and the Court will

unquestionably delay the resolution of this dispute.

The Opinion & Order, however, downplays this prejudice and incorrectly claims without

explanation or analysis that any discovery "would be extremely limited."  *Id.*  Perhaps most

significantly, the Opinion & Order does not address the substantial resources and time that

HSBC already has expended and would need to further expend in filings and discovery if

NCUA's belated supplementation and substitution is permitted, nor does it address how allowing

NCUA's belated supplementation and substitution could significantly delay, and perhaps preclude, the resolution of this case by settlement.

Where the motion to supplement will prejudice the opposing party or delay the resolution of the case, the motion should be rejected.  NCUA's request here does both.  The Opinion & Order therefore should be vacated and NCUA's motion should be rejected.

**IV.    NCUA's Proposed Substitution Would Be Futile Because Mr. Bush Is Not A Real Party in Interest.**

NCUA's proposed substitution under Rules 15 and 17 also should be denied as futile. *See, e.g., Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015).  A proposal is futile where the newly-added claims would not withstand a motion to dismiss.  *See Kassner v. 2nd Ave. Delicatessen, Inc*., 496 F.3d 229, 244 (2d Cir. 2007); *Griffin v. Pasqual*, No. 5:14-cv-1030(MAD/ATB), 2015 WL 1967537, at *4 (N.D.N.Y. Apr. 30, 2015).  Mr. Bush's proposed claims would not survive a challenge by HSBC (or an independent threshold standing inquiry by this Court) regarding Mr. Bush's standing.[8]  Pursuant to the Indentures, BNYM is the only party with real-party-in-interest status that has standing to bring the NGN Claims.  The Instrument of Appointment and Acceptance ("IAA") executed on August 29, 2018—less than a month before NCUA filed its motion to supplement and substitute in this case and more than three years after NCUA filed its original complaint against HSBC—between NCUA, BNYM, and Mr. Bush did

---

[8] Courts routinely accept standing challenges on ineffective assignment grounds in substitution cases.  *See, e.g.*, *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18 (2d Cir. 1997) (finding assignment between plaintiff investment adviser (purported assignee) and shareholders (purported assignors) to be ineffective to confer real-party-in-interest status); *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.a.r.l.*, 790 F.3d 411, 418–20 (2d Cir. 2015) (finding assignment between plaintiff assignee and noteholder assignor to be ineffective to confer real-party-in-interest status).  In any case, it is Mr. Bush's "burden [to show that he has] a valid assignment of [the NGN Claims]," and he has failed to do so for the reasons explained herein.  *Id.* at 418.

nothing to change that.  *See* ECF 353-1.  Accordingly, NCUA's proposed supplementation and substitution are futile.  *See McCabe v. Trombley*, 867 F. Supp. 120, 127 (N.D.N.Y. 1994) (denying motion to amend as futile where amendment would not cure defect in standing).

The Plaintiffs, as the purported assignee, bear the "burden of showing a valid assignment of a claim" through a "completed transfer" of the assignor's "entire interest."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.a.r.l.*, 790 F.3d 411, 418 (2d Cir. 2015); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997); *Citibank (South Dakota), N.A. v Martin*, 807 N.Y.S.2d 284, 291 (N.Y. City Civ. Ct. 2005) ("It is the assignee's burden to prove the assignment.").  NCUA and Mr. Bush have failed to carry their burden because NCUA's Proposed Supplemental First Amended Complaint ("PSFAC") fails to allege a "completed transfer" of BNYM's "entire interest" in the NGN Claims to Mr. Bush.  *See* PSFAC, ECF 353-3.  First, the Indentures do not permit BNYM to make the kind of assignment required under New York law for Mr. Bush to become the real party in interest.  Second, even if BNYM did have authority under the Indentures to assign the NGN Claims to Mr. Bush, the IAA does not constitute an effective assignment.  In reaching a contrary result, the Opinion & Order misapplied the case law regarding the validity of the assignment.

The Indentures provide that a separate trustee shall be appointed solely "for the purpose of meeting legal requirements applicable to [BNYM] in the performance of its duties."  ECF 65-2 § 5.13(a).  The IAA, however, identifies no "legal requirement" that BNYM cannot fulfill without appointing Mr. Bush.  The Opinion & Order concluded that Section 5.13 was permissive and did not limit BNYM from appointing a separate trustee for purposes that are not legally required.  The Indenture, however, specifically provides that "the Indenture Trustee shall *not* assign . . . any interest in any Underlying Security . . . *except as expressly provided herein*. . . ."

22

ECF 65-2 at 6 (emphasis added).  The Indenture does not permit BNYM free rein to appoint a separate trustee to implement NCUA's latest litigation stratagem following an adverse ruling by the Second Circuit, but rather limits BNYM to the ambit of legal requirements.

The Opinion & Order's alternative conclusion that the assignment here arguably might be construed as a necessary step in pursuit of legal claims misreads Section 5.01(a)(i).  That provision empowers the Indenture Trustee "to do all things *not inconsistent with the provisions of the Indenture* that it may deem advisable . . . in order to . . . appear in or defend any suit or other proceeding . . . to protect the interests of the Noteholders and the Guarantor."  ECF 65-2 § 5.01(a)(1) (emphasis added).  This provision makes the Indenture Trustee's power to pursue suits on behalf of Noteholders contingent on consistency with other Indenture provisions that limit appointment of a separate trustee to fulfil "legal requirements," not any and all litigation.

In addition, the Indentures provide that a separate trustee may only act "jointly with the Indenture Trustee."  ECF 65-2 § 5.13(b)(i).  This joint-action requirement precludes a "completed transfer" of BNYM's "entire interest" in the NGN Claims to Mr. Bush.  *Advanced Magnetics*, 106 F.3d at 17.  The requirement is clear and unambiguous.  Accordingly, "judicial preference" cannot be "interjected" in order to "vary the effect of the contract's terms."  *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *see also British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003) (a contract must be interpreted so as "to give effect" to "unequivocal language" employed by the parties).  The Opinion & Order's conclusion that the joint-action requirement was not "literal" and that BNYM's "consent" satisfied its requirement to act jointly, Op. & Order at 13, runs afoul of basic principles of contract interpretation.  BNYM's consent at the outset does not exhaust its obligations because Section 5.13(b)(1) requires that powers be both "exercised *and performed*"

jointly.  ECF 65-2 § 5.13(b)(i) (emphasis added).  "[I]n order to be effective, an assignment to transfer a chose in action must manifest an intent to *divest the assignor of all control* and right to his claim, thereby empowering the assignee to control the cause of action *and* to receive its fruits."  *Advanced Magnetics*, 106 F.3d at 15 (first emphasis added).  BNYM manifestly has not divested "all control"—it remains required to perform its duties jointly with the separate trustee.

BNYM's continued control over Mr. Bush is further evidenced by its ability under the Indentures to terminate him as Separate Trustee.  *See* ECF 65-2 § 5.13.  The Opinion & Order, citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980), found the right to terminate Mr. Bush did not render the assignment incomplete because BNYM could do so only "for cause."  Op. & Order at 11.  But *Navarro* addressed whether trustees with the power to "sue and be sued in their capacity as trustees" could do so notwithstanding trust *beneficiaries'* power to "elect and remove" them.  *Navarro*, 446 U.S. at 465 & n.14.  The instant case presents a much more attenuated situation: not whether BNYM may assert interests on behalf of the beneficiaries of the NGN Claims, but whether a separate trustee—granted certain authority on behalf of BNYM as Indenture Trustee and subject to BNYM's power to terminate it—can assert those interests.  The answer is no.  "An assignment cannot exist where an assignor retains control over the [subject matter] or any authority to collect or *any power to revoke*."  *Miller v. Wells Fargo*, 540 F.2d 548, 558 (2d Cir. 1976) (emphasis added).

Finally, even if the Indentures' provisions did not themselves foreclose a finding that the entire interest in the NGN claims could be assigned completely to Mr. Bush, the IAA is itself not a complete assignment of the entire interest in the claims.  Under the IAA, BNYM retains the

right to "any recoveries obtained" with respect to the NGN Claims.[9]  That Mr. Bush must remit

any recoveries to BNYM demonstrates that resolution of the NGN Claims will redress no injury

of Mr. Bush's.  The Opinion & Order dismissed the significance of BNYM's right to any

recoveries, stating that Mr. Bush's authority exceeded that of a mere "power of attorney" to

collect monies.  Op. &  Order at 10.  Mr. Bush's authority, however, still falls short of full

ownership of the NGN Claims.  Although the IAA purports to give Mr. Bush legal title to pursue

the claims, the Supreme Court cautions that there may be "prudential questions" that arise in

circumstances where assignments for collection are made other than "for ordinary business

purposes."  *Sprint Commcn's Co. v. APCC Servs., Inc.*, 554 U.S. 269, 292 (2008).  Under the

IAA, Mr. Bush is a mere figurehead in a transaction manufactured at the eleventh hour to

implement NCUA's latest litigation strategy after the rejection of its flawed derivative standing

theory.  This simply is not a circumstance that Rules 15 and 17 were intended to address.

<u>**CONCLUSION**</u>

For the foregoing reasons, HSBC respectfully requests the Court vacate the Opinion &

Order and deny NCUA's Motion To File A Supplemental Complaint And Substitute The

Separate Trustee As Plaintiff for The NGN Claims.

---

[9] The IAA provides that any recoveries obtained "will be remitted to [BNYM] for deposit in the Note Accounts (or other account(s) specified by [BNYM])."  ECF 353-1 at Sch-II (vii).  The Indentures define the "Note Accounts" as segregated trusts accounts established in the name of BNYM for the benefit of the Noteholders and Guarantor.  *See* ECF 65-2 at 17.

Dated: June 20, 2019                    By:   /s/ George A. Borden

                                     George A. Borden
Kevin M. Hodges (*pro hac vice*)
Andrew W. Rudge  (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
gborden@wc.com
khodges@wc.com
arudge@wc.com
ereddington@wc.com

*Counsel for HSBC Bank USA, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2019, a true and correct copy of the foregoing has been

filed with the Court's CM/ECF filing system, which will send a notification to counsel of record.

/s/  Matthew Underwood
Matthew Underwood