USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/8/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NATIONAL CREDIT UNION
ADMINISTRATION BOARD, et al.,

                    Plaintiffs,

-against-

HSBC BANK US, NATIONAL ASSOCIATION,
                    Defendant.
------------------------------------------------------------X

15 Civ. 2144 (LGS)

**ORDER AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs, the National Credit Union Administration Board ("NCUAB"), as liquidating agent for five corporate credit unions, sue HSBC Bank USA, National Association ("HSBC") for HSBC's alleged breach of contractual and fiduciary duties and the covenant of good faith and for violation of the Streit Act and the Trust Indenture Act of 1939. On September 12, 2018, NCUAB moved for leave to file a supplemental First Amended Complaint and substitute Graeme W. Bush (the "Separate Trustee") as Plaintiff for certain claims. In an Opinion and Order, filed May 22, 2019 (the "Order"), Magistrate Judge Sarah Netburn granted Plaintiffs' motion. HSBC timely objected and moved to vacate the Order. For the following reasons, the objection is overruled and the motion to vacate is denied.

I.    **BACKGROUND**

Familiarity with the Order, the underlying facts and procedural history is assumed.

NCUAB brought this action on March 20, 2015, against HSBC, for damages arising from five corporate credit unions' purchase of residential mortgage-backed securities ("RMBS") certificates from thirty-seven trusts, for which HSBC was acting as trustee. NCUAB also brought similar suits against other banks, including U.S. Bank and Wells Fargo.

As part of NCUAB's liquidation of the credit unions, NCUAB liquidated the distressed RMBS certificates held by the credit unions and re-securitized and transferred the certificates to newly-created NCUA Guaranteed Notes Trusts ("NGN Trusts"). The NGN Trusts then issued NCUA Guaranteed Notes ("NGN Notes"), under (i) an Indenture Agreement between the NGN Trusts, as Issuers, and the Bank of New York Mellon ("BNYM"), as Indenture Trustee, and (ii) guaranty agreements among NCUAB as Guarantor, the NGN Trusts and BNYM.

On April 27, 2015, HSBC moved to dismiss the Complaint, arguing in part that NCUAB lacked standing to sue on behalf of the NGN Trusts. In July 2015, Judge Scheindlin, then assigned to this case, denied the motion to dismiss, finding that while NCUAB did not have direct standing, it may have derivative standing to bring the NGN Trust-related Claims. The order directed NCUAB to amend the Complaint to assert the claims derivatively. *See Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*, 117 F. Supp. 3d 392 (S.D.N.Y. 2015) ("*HSBC I*"). NCUAB filed a First Amended Verified Derivative Complaint ("FAC"), which Defendant answered.

While the parties were briefing the first motion to dismiss in this case, Judge Forrest granted a motion to dismiss in the suit between NCUAB and U.S. Bank, ruling that NCUAB lacked derivative standing to bring claims on behalf of the NGN Trusts, but permitting the plaintiff to replead. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat. Ass'n*, No. 14 Civ. 9928, 2015 WL 2359295, at *3-6 (S.D.N.Y. May 18, 2015) ("*U.S. Bank I*"). Judge Forrest then granted a second motion to dismiss an Amended Complaint against U.S. Bank, on grounds that NCUAB was contractually foreclosed from asserting derivative claims, pursuant to the Indenture Agreement, and that only BNYM had the right to bring claims on behalf of the

NGN Trusts.[1]  *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 9928, 2016 WL 796850, at *9-10 (S.D.N.Y. Feb. 25, 2016) ("*U.S. Bank II*").  A year later, Judge Failla similarly granted in part a motion to dismiss by Wells Fargo, finding that NCUAB lacked derivative standing in that case due to the language in the Indenture Agreement.  *See BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 247 F. Supp. 3d 377, 412-15 (S.D.N.Y. 2017) ("*Wells Fargo I*").

Following Judge Forrest's rulings, NCUAB asked BNYM to appoint a Separate Trustee to pursue the claims.  BNYM then appointed Graeme W. Bush as Separate Trustee, and NCUAB moved to supplement its complaint and substitute the Separate Trustee as Plaintiff in the U.S. Bank case.  Judge Forrest denied the motion, and NCUAB appealed.  While the appeal was pending, Judge Failla granted NCUAB's similar motion to supplement the complaint and substitute the Separate Trustee as Plaintiff in the Wells Fargo case.  *See BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 10067, 2017 WL 3610511, at *14-21 (S.D.N.Y. Aug. 21, 2017) ("*Wells Fargo II*").

On August 2, 2018, the Second Circuit affirmed *U.S. Bank II*, finding that NCUAB lacked derivative standing to sue on behalf of either the NGN Trusts or the Indenture Trustee "under the clear and unambiguous language of the Trust and Indenture Agreements."  *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 252 (2d Cir. 2018) ("*U.S. Bank III*").  The Court of Appeals also found that Judge Forrest had not abused her discretion in

---

[1] The full Indenture Agreements had not been fully submitted to the Court for the first motion to dismiss in the U.S. Bank case.  *See U.S. Bank I*, 2015 WL 2359295, at *4 n.2.

3

denying NCUAB's motion to supplement its complaint and substitute the Separate Trustee as Plaintiff. *Id*.

In the instant case, NCUAB moved for leave to file a supplemental First Amended Complaint and to substitute the Separate Trustee as Plaintiff for the NGN Trust-related Claims, on September 12, 2018. The Order granted Plaintiffs' motion, finding that NCUAB had not engaged in undue delay, bad faith, or dilatory tactics, and that the requested relief was neither futile nor unduly prejudicial to HSBC. HSBC timely objected and moved to vacate.

## II. STANDARD

### A. Standard of Review

For objections to a magistrate judge's ruling on nondispositive matters, district courts must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A). The Order, which grants leave to supplement the Complaint and substitute the Separate Trustee, is a nondispositive matter. *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) ("[A] district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for [a] decision," subject to review under the "clearly erroneous or contrary to law" standard); *see also Kilcullen v. New York State Dep't of Transp.*, 55 F. App'x 583, 584-85 (2d Cir. 2003) (summary order) (characterizing a motion to amend a complaint and add a claim as a non-dispositive motion).

HSBC argues that, because granting the motion essentially precludes HSBC from asserting a defense based on lack of standing, the motion should be treated as dispositive. In support of this argument, HSBC cites cases holding that motions to strike affirmative defenses are treated as dispositive. *See, e.g., Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 285 F. Supp. 3d 648, 653 (S.D.N.Y. 2018) (A "motion to strike an affirmative defense is clearly

4

dispositive of a defense of a party."). Notwithstanding this general principle as to affirmative defenses, the weight of case law -- on the narrower issue of whether to allow Plaintiff to amend a complaint -- supports Plaintiffs' position that the issue should be deemed non-dispositive. *See Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15 Civ. 4546, 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018) (collecting cases and overruling objections to denial of leave to amend answer to add claims under a clearly erroneous standard); *see also, e.g., Weider Health & Fitness v. Austex Oil Ltd.*, No. 17 Civ. 2089, 2018 WL 5919521, at *2 (S.D.N.Y. Nov. 13, 2018); *Lenjo v. Lui*, No. 17 Civ. 7431, 2018 WL 4954101, at *1 (S.D.N.Y. Oct. 12, 2018); *MPI Tech A/S v. Int'l Bus. Machs. Corp.*, No. 15 Civ. 4891, 2017 WL 481444, at *3 (S.D.N.Y. Feb. 6, 2017); *Tardif v. City of New York*, No. 13 Civ. 4056, 2016 WL 2343861, at *2-3 (S.D.N.Y. May 3, 2016). In any event, even applying a de novo standard of review, this Court would reach the same conclusion and allow repleading to substitute the Separate Trustee as a plaintiff.

"A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wu Lin v. Lynch*, 813 F.3d 122, 126 (2d Cir. 2016) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A ruling is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Winfield v. City of New York*, No. 15 Civ. 5236, 2017 WL 5054727, at *2 (S.D.N.Y. Nov. 2, 2017) (internal citation omitted). "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *Xie*, 2018 WL 501605, at *1 (internal citation omitted).

## B. Leave to Supplement a Pleading

Federal Rule of Civil Procedure 15 addresses supplementing a pleading, and states, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." FED. R. CIV. P. 15(d). "[A]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, a Rule 15(d) motion should be freely granted." *U.S. Bank III*, at 256 (alterations omitted); *see also Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989) ("An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party."); *Haskins v. New York*, No. 17 Civ. 540, 2019 WL 1284076, at *6 (S.D.N.Y. Mar. 20, 2019) (same). In assessing prejudice, courts generally consider whether a court's decision would "(i) require the [opposing party] to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000); *accord Rodriguez v. Town of Ramapo*, No. 18 Civ. 1878, -- F. Supp. 3d --, 2019 WL 4688609, at *12 (S.D.N.Y. Sept. 26, 2019).

"The history of the [Federal] Rules [of Civil Procedure] makes clear not only that Rule 15 was meant to be generally applicable to a proposed change of plaintiffs, but that in this regard Rule 17(a) is implicated as well." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d

6

11, 19 (2d Cir. 1997) (citing the Fed. R. Civ. P. 15 Advisory Committee Notes (1966)); *accord In re Ace Sec. Corp. RMBS Litig.*, No. 13 Civ. 1869, 2015 WL 1408837, at *5 (S.D.N.Y. Mar. 26, 2015). Rule 17 addresses joining real parties in interest: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." FED. R. CIV. P. 17(a)(3). "Although the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Advanced Magnetics, Inc.*, 106 F.3d at 20 (internal citation omitted). "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Id.*; *accord In re Ace Sec. Corp. RMBS Litig.*, 2015 WL 1408837, at *5 ("A 'merely formal' amendment that 'in no way alters the known facts and issues on which the action is based' will generally be permitted, and relate back to the original filing of the complaint."). "A district court may deny a Rule 17(a) motion as untimely if it is not filed within a reasonable time after a standing objection is raised." *Nat'l Credit Union Admin. Bd.*, 898 F.3d at 256 (quotations omitted).

## III. DISCUSSION

The Order granting NCUAB leave to file a supplemental First Amended Complaint and substitute the Separate Trustee as Plaintiff for certain claims is affirmed.

### A. Timeliness of Plaintiffs' Motion

HSBC argues that NCUAB's motion is untimely because NCUAB should have been on notice that it lacks standing to bring the NGN Trust-related Claims due to the

7

rulings in *U.S. Bank I*, *U.S. Bank II* and *Wells Fargo I*. But, as the Order explains, "there is no rule that requires a party to abandon a favorable decision [specifically, the *HSBC I* finding that NCUAB has standing] whenever a non-precedential and contrary decision is issued by another district court." The Order further reasons that such a rule would run counter to the law of the case doctrine, which discourages parties from moving for reconsideration in an immediate case, on the basis of contrary outcomes in non-precedential cases, so as to preserve judicial resources and prevent impediments to the efficient disposition of a case. This reasoning is not clearly erroneous.

HSBC argues that the Order contravenes case law, but the cases that HSBC cites are distinguishable on their facts. *See Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 643 (2d Cir. 2016) (per curiam) (holding that denial of a Rule 17(a)(3) motion for ratification of a fraud claim by the real party in interest was not an abuse of discretion where the motion was made eighteen months after the issue was raised in pleadings); *City of New York v. Grp. Health Inc*., 649 F.3d 151, 154, 157 (2d Cir. 2011) (holding that denial of a motion to amend the complaint was not an abuse of discretion where the district court found that "substantial questions about the market definition analysis" existed in the complaint three years prior to plaintiff's motion to amend the complaint to add alternative market definitions); *De Jesus v. Sears, Roebuck & Co*., 87 F.3d 65, 71-2 (2d Cir. 1996) (holding that denial of a motion to amend the complaint was not an abuse of discretion where plaintiffs had four prior opportunities to plead their claims and failed to do so); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp*., 22 F.3d 458, 462 (2d Cir. 1994) (holding that the court did not abuse its discretion by denying a motion to amend the answer to add a counterclaim, four months after deadline to do so, because the counterclaim itself was futile); *Cerni v. J.P. Morgan Sec. LLC*,

208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016) (denying a motion to amend the complaint to add a claim where plaintiff could have added the claim in two previously amended complaints and had failed to do so). Because NCUAB moved to supplement the Complaint and substitute the Plaintiff fewer than two months after the Second Circuit held NCUAB lacked derivative standing, the motion is timely.

### B. Bad Faith

HSBC argues that NCUAB's delay in filing the motion to substitute and amend was in bad faith, because NCUAB knew that the real party in interest is the Separate Trustee since the outset of the lawsuit. NCUAB's decision to attach only excerpts of the Indenture Agreement to its opposition to HSBC's motion to dismiss, HSBC argues, was a deliberate effort to hide NCUAB's lack of standing. The Order finds, however, that NCUAB's legal theory of its standing is not frivolous, based on Judge Scheindlin's decision that NCUAB had standing in the instant case, and Judge Failla's finding in *Wells Fargo II* that NCUAB initially had not "rectif[ied] the standing issue because it *believed in good faith* that it was the real party in interest with regard to the derivative claims." *Wells Fargo II*, 2017 WL 3610511, at *19 (emphasis added). The Order further finds that NCUAB's failure to attach the full Indenture Agreement to the opposition papers is not sufficient to support a finding of fraud on the court. This reasoning is not clearly erroneous.

HSBC provides no evidence that NCUAB's actions were made in bad faith. As to filing only portions of the Indenture Agreement, Judge Scheindlin's Individual Rules limited each exhibit to fifteen pages and required that documents "be excerpted to include only relevant material." INDIVIDUAL RULES AND PROCEDURES, JUDGE SHIRA A. SCHEINDLIN (2013).

As to NCUAB's purported knowledge that it lacked derivative standing, HSBC's bad

9

faith argument is factually baseless, and the cases it relies on are distinguishable. *See Reisner v. Gen. Motors Corp.*, 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981), *aff'd*, 671 F.2d 91 (2d Cir. 1982) (denying a motion to amend the complaint to add a new theory of recovery and new inconsistent factual allegations, after defendants had filed a motion for summary judgment, where plaintiffs should have known the theory and facts when several earlier complaints were drafted); *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 303-05 (S.D.N.Y. 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997) (denying a motion to amend the complaint to add additional factual allegations, ten months after deadline to amend and two years after complaint was filed, where plaintiff should have known the facts at the initial filing of the case, the request to amend was in bad faith, and in any event the amendment would be futile). Before August 2018, with a split in the District Courts and no ruling yet from the Second Circuit, NCUAB can hardly be criticized for not guessing correctly how the law would evolve. Two other judges in this district also found that NCUAB's legal position that it had standing was taken in good faith. *See Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ. 8919, -- F. Supp. 3d --, 2019 WL 5190889, at *6 n. 7 (S.D.N.Y. Oct. 15, 2019) ("Clearly, this standing issue led to differing opinions at the district court level, and it is a fair inference that NCUA[B]'s assertion of derivative standing in the FAC was made in good faith."); *Wells Fargo II*, 2017 WL 3610511, at *20 (finding that NCUAB had a "genuine belief in the face of unsettled law that it was the real party in interest" where defendants made similar arguments as to NCUAB's purported litigation strategy).

    **C. Prejudice to HSBC**

"In determining what constitutes 'prejudice,' [courts] generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant

10

additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [adverse party] from bringing a timely action in another jurisdiction.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

HSBC argues that permitting NCUAB's amendment raises significant legal and factual issues requiring a new round of discovery. The Order finds, to the contrary, that any discovery necessary for HSBC's new defenses would be "extremely limited," and that the parties should be able to complete that minimal discovery before the summary judgment briefs are due in June 2021. The Order further cites Judge Failla's ruling in *Wells Fargo II*, which finds that a similar substitution of the Separate Trustee would require "minimal additional discovery." *Wells Fargo II*, 2017 WL 3610511, at *20. This analysis is not clearly erroneous.

HSBC argues that it has already participated in extensive discovery on the assumption that NCUAB is the Plaintiff, and that being subjected to expansive additional discovery would be prejudicial. This argument is unpersuasive because the completed discovery will remain relevant and likely will be supplemented only minimally. Judge Netburn, who wrote the Order, controls the extent of future discovery in this case. She also oversaw discovery in NCUAB's related case against Wells Fargo, where substitution of the Separate Trustee resulted in only minimal additional discovery. Where NCUAB is simply amending the Complaint to substitute a party in interest, and an identical amendment in a similar action resulted in minimal discovery, the Order's holding that additional discovery will not prejudice Defendant is not clearly erroneous.[2]

---

[2] The parties make arguments regarding the timeliness of the NGN Trust-related Claims brought by the Separate Trustee. As the Order does not rule on this issue, it is not addressed here.

### D. Futility

The Order holds that the requested relief would not be futile because the underlying trust documents grant the Separate Trustee the necessary powers to qualify as the real party in interest. Specifically, the Order finds that (1) the Indenture Agreement provisions permitting the Indenture Trustee (BNYM) to retain the right to recovery or to terminate the Separate Trustee for cause or with consent do not preclude the Indenture Trustee from assigning its status as the real party in interest to the Separate Trustee; and (2) the Indenture Agreement itself was not violated by the appointment of the Separate Trustee.[3] These findings are also not clearly erroneous.

The Order holds that the Indenture Agreement's provision permitting the Indenture Trustee to terminate the Separate Trustee for cause does not preclude assignment by rendering an assignment incomplete. The Order relies on *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458 (1980), in which the Supreme Court held that a trustee was the real party in interest where it "possess[ed] certain customary powers to hold, manage, and dispose of assets for the benefit of others" and the trust beneficiaries could "neither control the disposition of [the] action nor intervene in the affairs of the trust except in the most extraordinary situations." *Id.* at 464-65. This rule remained true even where beneficiaries had the power to remove the trustee, because "this form of 'control' [of beneficiaries over trustees] does not strip the trustees of the powers that make them real parties to

---

[3] Whether HSBC has standing to challenge the Separate Trustee's assignment on the theory that the assignment violates the terms of the Indenture Agreement need not be addressed here, since HSBC's arguments fail on the merits. *See BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 10067, 2017 WL 3610511, at *16 (S.D.N.Y. Aug. 21, 2017) (declining to hold on the issue of whether the defendant has standing to challenge the validity of the Separate Trustee Agreement as a means of challenging the Separate Trustee's real-party-in-interest status because, the challenge fails on the merits).

the controversy . . . ." *Id*. at 465 n. 14. Under this rationale, the Order appropriately found the language in the appointing clauses -- "transfer[ing] . . . all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee . . . in connection with the [at-issue claims]" to the Separate Trustee -- rendered the Separate Trustee the real party in interest. HSBC argues that the Order's reliance on *Navarro* is improper because *Navarro* addresses the relationship between a trustee and trust beneficiaries, not between a trustee and a separate trustee. But this formalistic reading of *Navarro* mischaracterizes its broader principle. The fact that the Separate Trustee can be terminated for cause is insufficient to strip the Separate Trustee of its real-party-in-interest status. Judge Failla reached the same conclusion based on the same contractual language in *Wells Fargo II*. *See Wells Fargo II*, 2017 WL 3610511, at \*15.

The Order similarly finds that the Indenture Agreement provisions, permitting the Indenture Trustee to retain the right to recovery, did not preclude assignment by rendering an assignment incomplete under Second Circuit case law. HSBC argues that, because the Indenture Trustee retains the right to any recoveries obtained under the agreement, "prudential questions" arise under *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 290 (2008) (the "prudential standing doctrine embodies judicially self-imposed limits on the exercise of federal jurisdiction." (internal quotation marks omitted)). But under *Sprint*, although the Supreme Court has "imposed [prudential limitations] in prior cases where a plaintiff has sought to assert the legal claims of third parties," *id*. at 289, such limitations are not appropriate where a party has been "assigned . . . all rights, title and interest in claims," *id*. at 290 (quotation marks omitted). Here, the Separate Trustee *is* assigned "all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee . . . in connection with" the at-issue claims, and therefore *Sprint*'s limitation is inapplicable.

The Order also finds that the appointment of the Separate Trustee did not violate the Indenture Agreement itself. HSBC argues that the Indenture Agreements restrict the Indenture Trustee to appointing a Separate Trustee only for the purpose of meeting certain legal requirements, which do not include assisting in bringing this lawsuit. The Order rejects this argument, on the ground that the clause permitting the appointment of a Separate Trustee (Section 5.13(A)) does not restrict the Indenture Trustee in this way, and even if the clause is restrictive, the duties of the Indenture Trustee include appearing in suits to protect the interests of the Noteholders and Guarantor (Section 5.01(a)(i)). Section 5.13(a) expressly states that appointment of a Separate Trustee is permitted "for the purpose of meeting legal requirements applicable to [the Indenture Trustee] in the performance of its duties hereunder . . . ." Section 5.01(a)(i), which identifies "[t]he rights, duties and liabilities of the Indenture Trustee," further states that "[t]he Indenture Trustee shall have the full power and authority to do all things not inconsistent with the provisions of this Indenture that it may deem advisable in order to . . . institute, appear in or defend any suit or other proceeding with respect hereto, or to protect the interests of the Noteholders and the Guarantor." Read together, these clauses expressly permit appointment of a Separate Trustee to pursue this lawsuit. The language in the Granting Clause, precluding the assignment of any interest in any asset constituting the Trust Estate, "except as expressly provided herein," does not change the interpretation. *See also Wells Fargo II*, 2017 WL 3610511, at \*16 ("Reading these sections together, and in the context of the broader Indenture Agreement, the Court believes BNYM could claim the appointment of the Separate Trustee was necessary to permit it to meet the legal requirements applicable to it in the performance of its duties.") This is particularly true at this stage in the litigation where the Court must "resolve all ambiguities in the contract in Plaintiffs' favor." *Yazurlo v. Bd. of Educ.*

of City of Yonkers, No. 17 Civ. 2017, 2018 WL 4572255, at *3 (S.D.N.Y. Sept. 24, 2018); *accord Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings.").

Finally, the Order holds that the Indenture Agreement permits the Indenture Trustee to consent to the Separate Trustee pursuing this litigation under Section 5.13(b)(i), and cites in support *Wells Fargo II*, which reached the same conclusion on NCUAB's motion to supplement its complaint against Wells Fargo. *See generally Wells Fargo II*, 2017 WL 3610511. HSBC argues that the Order runs afoul of basic contract interpretation principles because the Indenture Agreement does not permit the Indenture Trustee to relinquish all control over the litigation to the Separate Trustee. The relevant clause (Section 5.13(b)(i)) states that "the rights, powers, duties and obligations conferred or imposed upon such separate or co-trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate or co-trustee jointly, as shall be provided in the appointing instrument." The appointing instrument here in turn provides that "the Separate Trustee shall assume any and all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee . . . in connection with the" claims in this action. As the Order found, interpreting this clause to bar the Indenture Trustee and the Separate Trustee from acting separately, on the Indenture Trustee's consent, would make appointment of a Separate Trustee pointless. Such an interpretation would run afoul of basic contract interpretation principles. *See Marin v. Constitution Realty, LLC*, 71 N.E.3d 530, 534 (2017) ("[A] contract should be read as a whole, ... and if possible it will be so interpreted as to

15

give effect to its general purpose.") (internal citation omitted).[4] It is not clearly erroneous to interpret the contract as permitting the Separate Trustee to pursue this litigation independently from the Indenture Trustee upon the latter's consent. *See Wells Fargo II*, 2017 WL 3610511, at *16 ("Finally, the Court agrees that the Trust Agreement's joint-action requirement does not preclude on its face an action taken by the Separate Trustee with the Indenture Trustee's consent . . . BNYM's consent to the terms of the Separate Trustee Agreement evidences to the Court BNYM's belief that the terms outlined therein are 'not inconsistent' with the Indenture Agreement's provisions. At this stage, the Court credits that interpretation.").

## IV. CONCLUSION

For the foregoing reasons, the Order granting leave to file a supplemental First Amended Complaint and substitute Graeme W. Bush, the Separate Trustee, as Plaintiff for certain claims is adopted. HSBC's objection is OVERRULED, and the motion to vacate is DENIED. NCUAB's motion to submit a sur-reply is DENIED as moot.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 379 and 384.

Dated: January 8, 2020
New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

[4] The Indenture Agreement provides that it is governed by New York law. Federal courts sitting in diversity generally apply the choice-of-law rules of the forum state, *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *accord Christian v. TransPerfect Global, Inc.*, 17 Civ. 5554, 2018 WL 4571674, at *4 (S.D.N.Y. Sept. 24, 2018), and "New York law gives full effect to the parties' choice-of-law provisions." *Dins v. Nationstar Mortgage, LLC,* No. 16 Civ. 2943, 2017 WL 570941, at *3 (S.D.N.Y. Feb. 13, 2017) (quoting *Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir. 1996)).