USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/11/2020

LAW OFFICES
**WILLIAMS & CONNOLLY LLP**

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

LAUREN H UHLIG
(202) 434-5897
luhlig@wc.com

August 3, 2020

<u>Via Email</u>

Honorable Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square, Room 430
New York, NY 10007

      Re:    <u>HSBC Bank USA, N.A. v. NCUA</u>, No. 15-cv-02144

Dear Judge Netburn:

      I write on behalf of Defendant HSBC Bank USA, N.A. ("HSBC"), in response to Plaintiffs' letter motion demanding the production of expert reports and transcripts from 16 unrelated RMBS repurchase cases. Those repurchase cases were filed by HSBC as a nominal plaintiff after certificateholders directed and indemnified the trustee to pursue claims in those trusts. None of those cases involved the bellwether trusts at issue in this action or HSBC's testifying experts here. Accordingly, Plaintiffs' motion seeks materials that are not properly subject to expert discovery and that are neither relevant nor admissible here.

**I.    Background**

      Fact discovery in the bellwether trusts[1] closed on May 1, 2017.[2] *See* Mar. 23, 2017 Order (ECF 234). The parties now are conducting expert discovery related to those trusts. On March 2, 2020, HSBC propounded expert discovery requests for the production of a discrete set of prior reports and testimony from Plaintiffs' testifying experts in this case. Specifically, HSBC sought reports submitted by Plaintiffs' experts Leonard A. Blum, Christopher J, Milner, and Gary Shev in seven RMBS cases brought by Plaintiffs. Both the Federal Rules and SDNY case law support HSBC's entitlement to this discovery. Rather than make a straightforward production of this information, which already is in Plaintiffs' possession, Plaintiffs refused to provide any of the discovery and further refused to convey HSBC's subpoenas (seeking the same material) to their expert witnesses, whom Plaintiffs' counsel stated they represent.

---

[1] By order of the Court and agreement of the parties, this case has been proceeding initially only with respect to certain bellwether trusts. *See* Order (ECF 11); June 24, 2015 Hr'g Tr. 5:1-24.

[2] The Court previously granted a limited extension of fact discovery to June 16, 2017, related to party depositions. *See* May 5, 2017 Order (ECF 255).

The parties met and conferred about *HSBC's* expert discovery requests on May 13, 2020.[3] Plaintiffs continued to refuse to provide the requested expert discovery related to their testifying experts, which exacerbates a fundamental fairness problem that arises in the unique procedural posture of this case. The parties here do not have equal access to the prior reports of the opposing party's testifying experts. As the Court knows, Plaintiffs have sued a number of RMBS trustees. Many of the experts testifying on behalf of HSBC in this case already have submitted reports in those other RMBS cases, to which Plaintiffs have access. In contrast, HSBC was not a party to the other RMBS litigation brought by Plaintiffs and thus does not have access to Plaintiffs' experts' reports in those cases.

In light of Plaintiffs' blanket refusal to provide the above expert discovery and the unequal access to information, HSBC proposed a compromise that would have leveled the playing field with regard to testifying experts and avoided burdening the Court with a discovery motion. HSBC proposed that if Plaintiffs would agree not to seek or use prior testimony and reports from HSBC's testifying experts, then HSBC would do the same with respect to Plaintiffs' testifying experts.[4] On May 28, 2020, Plaintiffs rejected HSBC's offer of compromise and demanded instead that HSBC produce expert reports and transcripts from 16 RMBS repurchase cases *that involve none of HSBC's testifying experts here and none of the trusts at issue in this case*. HSBC previously informed Plaintiffs that HSBC's experts in this litigation had no role in the 16 repurchase cases, Ex. A (May 27, 2020 12:59 p.m. Email) (relevant language highlighted for reference), but Plaintiffs propounded discovery requests seeking the information anyway.

## II.      Argument

Plaintiffs' May 28 discovery demand was a transparent attempt to go on the offensive, in the face of legitimate expert discovery requests from HSBC, in order to seek irrelevant fact discovery long after the time authorized to do so. Plaintiffs' requests are neither proper expert discovery nor relevant, and their motion should be denied.

As a threshold matter, Plaintiffs' motion does not comply with the Court's Individual Rules, which require that "[a]ny party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone," and that any subsequent letter to the Court "***must include evidence that the meet-and-confer process occurred***, including when and whether it was in person or over the telephone." Indiv. R. II(C) (Jan. 31, 2020) (emphasis in original). Plaintiffs have not complied with the Court's directive. Instead, when HSBC's counsel proposed dates for a telephonic meet and confer, Plaintiffs' counsel summarily declared that Plaintiffs would proceed to immediately file their motion,

---

[3] At that time, Plaintiffs had not served the discovery demand that is the subject of their instant motion. That demand was not made until May 28, 2020. The parties did not hold any meet and confer calls after May 13. Thus, Plaintiffs mischaracterize the facts when they state in their letter that "the parties have met and conferred" regarding Plaintiffs' demand. Attaway Ltr. at 5.

[4] HSBC reserves the right to file a separate letter motion concerning its discovery requests should Plaintiffs continue to refuse to agree to HSBC's compromise.

Honorable Sarah Netburn
August 3, 2020
Page 3

claiming the parties already had met and conferred regarding Plaintiffs' demand. *See* Ex. B (July 28–29, 2020 Emails). In fact, the parties had *not* met and conferred in person or by telephone concerning Plaintiffs' demand. Likely for this reason, Plaintiffs failed to include in their letter the required statement of "when and whether [the meet and confer] was in person or over the telephone." Indiv. R. II(C). For this reason alone, Plaintiffs' motion should be denied. In any event, Plaintiffs' motion also should be denied on the merits.

   **A. Plaintiffs' Discovery Requests Are Not Proper Expert Discovery Under the Federal Rules.**

Plaintiffs' requests do not comply with the federal rules for expert discovery because they do not seek material from any experts in this case. As Plaintiffs are well aware, none of HSBC's experts in this case submitted reports in any of the 16 repurchase actions. Accordingly, none of the requested material is properly the subject of expert discovery. *See* Fed. R. Civ. P. 26(a)(2) (permitting expert discovery only of designated experts in the case at issue).

The rules provide for discovery *only as to disclosed experts*, including their prior cases, so the opposing party can obtain the prior reports and testimony of the disclosed experts. *See id.*; Fed. R. Civ. P. 26(a)(2)(B)(v). The federal rules on expert discovery do not permit discovery of reports and transcripts from individuals who are *not* experts in the case. Plaintiffs fail to cite any rule showing otherwise, and Plaintiffs' three cases do not support Plaintiffs' position. Indeed, Plaintiffs do not even attempt to argue that *Surles v. Air France*, 2001 WL 815522 (S.D.N.Y July 19, 2001), supports their argument, and with good reason: that case addresses the production of prior reports only from experts in the case at issue. *Id.* at *6–*7. Likewise, *Evanko v. Electronic Systems*, 1993 WL 14458 (S.D.N.Y. Jan. 8, 1993), concerns discovery only from experts in the case at issue. *Id.* at *3–*4. Finally, *Blackrock v. Wells Fargo*, 2017 WL 3610511, at *10 (S.D.N.Y Aug. 21, 2017), does not address discovery of prior expert reports at all.

Plaintiffs argue in the alternative that, if the Court finds their requests are not proper expert discovery, the requests should be construed instead as "a limited exception to the close of fact discovery" because, Plaintiffs assert, "the expert reports sought here are likewise covered by the scope of multiple fact discovery requests" propounded in 2015. This assertion, which fails to identify a single relevant fact discovery request, is meritless. Fact discovery closed over 3 years ago and was limited to the bellwether trusts, none of which were at issue in the 16 repurchase cases. *See* Order (ECF 11); June 24, 2015 Hr'g Tr. 5:1-24 (limiting discovery to bellwether trusts). Furthermore, in purported support for their alternative request, NCUA again misrepresents the facts, incorrectly claiming that HSBC "has produced these expert reports in its other cases." Attaway Ltr. at 5. HSBC has not produced any expert reports from these 16 RMBS repurchase cases in any of the coordinated SDNY cases.

   **B. Plaintiffs' Discovery Requests Seek Information That Is Neither Relevant Nor Admissible.**

Because Plaintiffs' requests are not proper expert discovery, their motion should be denied. But even if construed as late fact discovery, Plaintiffs' motion still should be denied.

Honorable Sarah Netburn
August 3, 2020
Page 4

***First***, Plaintiffs' requests do not seek information relevant to any claim at issue. *See* Fed. R. Civ. P. 26(b)(1). As the Court previously held, establishing HSBC's "discovery" of breaches requires showing that HSBC had actual knowledge "with respect to a specific defect, in a specific loan, in a specific trust." Mar. 10, 2017 Order (ECF 225) at 13. Other courts unanimously have agreed. "[I]t remains the law in RMBS cases of this kind that '[t]o prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a loan-by-loan and trust-by-trust basis.'" *BlackRock*, 2017 WL 3610511, at *7 (quoting *BlackRock v. Wells Fargo*, 247 F. Supp. 3d 377, 389 (S.D.N.Y. 2017), *objections overruled*, WL 3610511 (S.D.N.Y. Aug. 21, 2017)); *see also Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016) (same); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 14-CIV-4394 (AJN), 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) (same)); *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 162 (2d Cir. 2014). Opinions offered by experts in different cases about different loans from different originators in different trusts have no probative value in this case, particularly where such experts have no role in the current case.

It makes no difference that Deutsche Bank Structured Products ("DB") was a warrantor in the 16 repurchase case trusts and also is a warrantor in some of the bellwether trusts. None of the 16 repurchase cases involve the bellwether trusts.[5] Plaintiffs offer no support (and there is none) for the proposition that if HSBC properly was directed and indemnified by certificateholders to file suit as to a group of loans in one trust, then that direction somehow triggers a duty for HSBC to investigate different loans in different trusts. Such a proposition runs directly counter to the no-investigation provisions in the PSAs, among many other provisions. Moreover, the 16 repurchase actions were all brought in 2012 and 2013, and any expert reports would not have been created until years later, which would have been long after any deadline for filing additional repurchase actions, including in the bellwether trusts. Accordingly, such reports could not be probative of HSBC's knowledge for trusts in this action.[6]

***Second***, Plaintiffs' suggestion that reports and testimony from experts unrelated to this case regarding non-bellwether trusts could constitute "admissions" by HSBC in this case also is meritless. Plaintiffs' argument is based in part on a mischaracterization of HSBC's role in the putback actions. For example, Plaintiffs incorrectly claim that "HSBC's own forensic review[s]" in these 16 cases "revealed numerous breaching loans." Attaway Ltr. at 1. As Plaintiffs are well aware, however, the "forensic review[s]" underlying the Complaints in those matters were

---

[5] One repurchase case involved a non-bellwether trust covered by NCUA's complaint. However, the repurchase case for that trust, ACE 2006-FM1, was dismissed at the pleading stage and no discovery was taken, so there are no expert reports or testimony relating to that trust.

[6] Nor are Plaintiffs' correct that Judge Schofield's decision denying Plaintiffs' motion for reconsideration after affirming this Court's opinion denying Plaintiffs' attempt to use sampling supports their request here. Much to the contrary, Judge Schofield held that "[g]iven the limited and loan-specific nature of the trustee's duties . . . the 'discovery or receipt of notice' requirement must require HSBC to have information about a specific loan, rather than generalized knowledge or notice extrapolated from other loans." Mar. 19, 2018 Order (ECF 314) at 5, *Pls.' mot. for further reconsideration denied*, Apr. 24, 2018 (ECF 335) at 1–2.

Honorable Sarah Netburn
August 3, 2020
Page 5

conducted by the directing certificateholders, not HSBC. Moreover, the Complaints in the putback actions were drafted by special litigation counsel that were retained at the direction of the directing certificateholders. Because such Complaints were filed by HSBC at the direction of certificateholders only in a representative capacity as indenture trustee of those specific trusts, any allegations in the pleadings and any opinions of experts in those cases—none of whom are experts in this case—cannot be attributed to HSBC in this case. *Cf.* Restatement (Second) of Judgments § 36 ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."); *see also Tuper v. Tuper*, 34 A.D.3d 1280, 1281 (4th Dep't 2006) (explaining that "[i]t has been repeatedly held that persons suing or being sued in their official or representative capacity are, in contemplation of law, distinct persons, and strangers to any right or liability as an individual"); *id.* at 1281–82 (finding trustee in their representative capacity not in privity with the trustee in their individual capacity); *Teamsters v. N.Y. State Teamsters Council Health & Hosp. Fund*, 999 F. Supp. 102, 110 (N.D.N.Y. 1995) (finding statements made by party to be inadmissible as admissions of a party opponent when made in a different representative capacity).

The actual facts further confirm the disingenuousness of NCUA's litigation position in this case. Certificateholders in other trusts sponsored by DB could have directed HSBC as trustee to file suit, including in the bellwether trusts in this case (ACE 2005-AG1, ACE 2006-OP2, DBALT 2007-OA1, and MHL 2007-1). They did not. In fact, NCUA as certificateholder did the exact opposite. After independently investigating alleged breaches of representations and warranties in DB-sponsored trusts (including the bellwether trusts), NCUA negotiated and concluded its own direct settlement with DB. In conjunction with that settlement, NCUA agreed ▮▮▮▮▮ in relation to ACE 2005-AG1, ACE 2006-OP2, DBALT 2007-OA1, and MHL 2007-1. Ex. C ▮▮▮▮▮ It is equally ironic and brazen, to say the least, that NCUA further claims it now needs irrelevant fact discovery related to such putback litigations to advance its claims as to HSBC's purported knowledge of alleged breaches.

---

Plaintiffs' motion to compel, ECF No. 402, is DENIED without prejudice for failure to comply with the Court's Individual Rules, which require that parties meet and confer before addressing discovery disputes to the Court and include evidence of that meet-and-confer process in any letter to the Court. During their next meet and confer, the parties should make best efforts to reach a compromise on this issue. The Clerk of Court is directed to terminate the motion at ECF No. 402.
**SO ORDERED**

SARAH NETBURN
United States Magistrate Judge

Dated: August 11, 2020
        New York, New York